**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: INVOKANA (CANAGLIFLOZIN) PRODUCTS LIABILITY LITIGATION | MDL Docket No. 2750 |

**DEFENDANT JANSSEN PHARMACEUTICALS, INC.'S
RESPONSE TO MOTION FOR TRANSFER AND COORDINATION AND
CONSOLIDATED PRETRIAL PROCEEDINGS**

Defendant Janssen Pharmaceuticals, Inc. ("Janssen") agrees with movants that there are cases pending in federal courts across the country involving Invokana that should be consolidated and transferred pursuant to 28 U.S.C. § 1407 to a single district court for coordinated pretrial proceedings. Given the growing trend in recent years, however, for the formation of multidistrict litigation to result in the filing of meritless claims to increase plaintiff inventories and to encourage resolution, these cases need to be consolidated and transferred to a judge with not only the skill and knowledge to efficiently and effectively manage the coordinated proceedings, but also the willingness and motivation to rein in any abuses that may result from coordination. Janssen agrees with movants that Judge Brian Martinotti of the District of New Jersey is an appropriate choice for transferee judge. In the alternative, Janssen proposes Judge Amy St. Eve of the Northern District of Illinois.

**I.     BACKGROUND**

There are currently at least 57[1] actions pending in 11 different federal judicial districts asserting common factual allegations and involving overlapping claims and legal issues.

---

[1] Movants' Amended Schedule of Actions included 55 actions in 11 judicial districts. The Schedule failed to include two actions of which Janssen is aware—*Green v. Janssen*

A. **Plaintiffs And Their Basic Allegations.**

Plaintiffs in this litigation allege injuries arising from their use of Invokana,[2] a prescription drug developed by and manufactured for Janssen. The Food and Drug Administration ("FDA") approved Invokana in 2013 as an adjunct to diet and exercise to help lower blood sugar in adults with type 2 diabetes. Invokana is a member of a class of pharmaceuticals known as sodium-glucose cotransporter 2 ("SGLT2") inhibitors, which are designed to inhibit renal glucose reabsorption with the goal of lowering blood glucose. Invokana was the first SGLT2 inhibitor approved for use by the FDA.

Plaintiffs contend that they have experienced injuries including, but not limited to, kidney failure and ketoacidosis as a result of ingesting Invokana, which they allege was defectively designed, manufactured, and/or marketed by Janssen. Plaintiffs all allege that Janssen failed to provide adequate warnings of the risks and dangers posed by Invokana.

B. **Janssen Is The Only Common Defendant Across All Cases.**

While there are a number of co-defendants named in the pending actions,[3] Janssen is the

---

*Pharmaceuticals, Inc. et al.*, Case No. 3:16-cv-6046 (D.N.J.) and *Moore v. Janssen Pharmaceuticals, Inc. et al.*, Case No. 0:16-cv-00065 (E.D. Ky.). Of the cases listed in movants' Amended Schedule of Actions, Janssen has been served in only 30. (*See* Doc. 23-2 (Schedule of Actions for Notice of Appearance for John Q. Lewis, counsel for Janssen).)

[2] In one case listed on Movants' Amended Schedule of Action, *House v. Janssen Pharmaceuticals, Inc. et al.*, Case No. 3:15cv-894 (W.D. Ky.), plaintiff alleges use of Invokana, Invokamet, and Farxiga. Invokamet is a combination of Invokana and metformin, and was developed by and is manufactured for Janssen. Farxiga, also a SGLT2 inhibitor, is a product of Bristol-Meyers Squibb and AstraZeneca. (*See House* Compl. ¶ 34.)

[3] The following defendants have been variously named in the 30 cases in which Janssen has been served: Johnson & Johnson, Janssen Research & Development, LLC, Janssen Ortho, LLC, and Mitsubishi Tanabe Pharma Corporation. Johnson & Johnson is a New Jersey corporation with its principal place of business in New Jersey. Janssen Research & Development, LLC ("JRD"), is a New Jersey limited liability company with its principal place of business in New Jersey. Janssen Ortho, LLC, is a Delaware limited liability company with its principal place of business in Puerto Rico. Mitsubishi Tanabe Pharma Corporation is a Japanese corporation with its principal place of business in Osaka, Japan.

only defendant named in all of these cases—which makes sense. Invokana was developed by and is manufactured for Janssen, and Janssen holds the New Drug Application (NDA) for Invokana. Janssen is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey. The Janssen teams responsible for clinical research and development, medical affairs, regulatory approvals and compliance, labeling, marketing and sales of Invokana are based in New Jersey, and individuals with substantive knowledge and decision-making authority regarding the development, labeling, regulatory compliance, marketing, and sale of Invokana in the United States who would be potential trial witnesses are located in New Jersey.

### C. The Location And Status Of The Pending Actions.

Of the at least 57 Invokana cases that are currently pending, none has advanced significantly through discovery, nor toward trial, such that transfer would be unduly prejudicial or inefficient. Indeed, Janssen has only be served in 32 of the 57 cases. Of these, answers have been filed in only six cases. In the remaining 26 cases, motions to dismiss are awaiting disposition or dispositive motion briefing is in progress.[4] There have been several rulings on important legal issues in these cases.[5]

---

[4] Three of the earliest-filed Invokana cases—*Counts v. Janssen Pharmaceuticals, Inc., et al.*, Case No. 3:15-01196 (S.D. Ill.), *Allen v. Janssen Pharmaceuticals, Inc., et al.*, Case No. 3:15-01195 (S.D. Ill.), and *Schurman v. Janssen Pharmaceuticals, Inc., et al.*, Case No. 3:15-01180 (S.D. Ill.)—are all pending before Judge Staci Yandle in the Southern District of Illinois. That district is known to be overburdened, ranking 94th out of 94 district courts in terms of time from filing to resolution of civil cases, with nearly 40% of its cases pending for over three years. *See* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/06/30-1 (last visited Oct. 6, 2016). This is reflected in the management of *Counts*, *Allen*, and *Schurman*; a motion to dismiss in each case has been fully briefed and pending disposition since late January or early February of this year.

[5] The courts that have ruled on dispositive motions have entered orders addressing lack of personal jurisdiction over Johnson & Johnson, Mitsubishi Tanabe Pharma Corporation, and other Defendants, preemption of design defect and failure-to-warn claims, and the insufficiency of Plaintiffs' pleadings.

## II.  ARGUMENT

### A.  Transfer And Consolidation Of Most Invokana Actions Is Appropriate.

While Janssen disagrees with Plaintiffs' characterization of the facts, it agrees that there are common issues meeting the standards for pretrial consolidation. Of course, these cases all involve very individualized and plaintiff-specific issues, including different usage histories,

---

For example, in *Fleming v. Janssen Pharmaceuticals, Inc.,* No. 2:15-cv-02799, --- F. Supp. 3d ---, 2016 WL 3180299 (W.D. Tenn. May 6, 2016), the court granted Johnson & Johnson's motion to dismiss for lack of personal jurisdiction, holding that plaintiff's allegations were insufficient to establish purposeful availment in Tennessee. *See id.* at *1–*3. In addition to finding no purposeful availment, the court also held that the plaintiff did not demonstrate that his alleged injuries arose from Johnson & Johnson's purported forum activities. *See id.* at *4. The court also dismissed plaintiff's design claims with prejudice on the grounds that they were preempted. *See Fleming*, 2016 WL 3180299, at *4–*5 (confirming that "preemption can apply to both generic and branded drugs" and "Defendants could not comply with both state and federal law with respect to Invokana"). *Fleming* subsequently was voluntarily dismissed.

In *Brazil v. Janssen Research & Dev. LLC*, --- F. Supp. 3d ---, 2016 WL 4844442, at *7 (N.D. Ga. Mar. 24, 2016), the court dismissed Johnson & Johnson for lack of personal jurisdiction on the grounds that it is a holding company that was not involved in the manufacture or sale of Invokana. The court also dismissed all of the plaintiff's claims as insufficiently pled. *See id.* at *8–*11. In *Brazil v. Janssen Research & Development LLC*, No. 4:15-cv-0204, --- F. Supp. 3d ---, 2016 WL 3748771 (N.D. Ga. July 11, 2016), the court then considered the plaintiff's amended complaint and dismissed the manufacturing defect claim, design defect claims, and violation of consumer protection law claim for lack of pleading specificity. *Id.* at *5–*6, *8–*9. The court also found the design defect claims to be preempted to the extent they were based on an alleged failure to change to chemical composition of the drug. *See id.* at *43. Finally, the court dismissed the failure-to-warn claims against Janssen Ortho, LLC as preempted because it was not the NDA holder and thus had no authority to change the labeling of Invokana. *Id.* at *47–*50. Johnson & Johnson was dismissed on this same basis after the plaintiff conceded the issue in *Lessard v. Janssen Pharmaceuticals, Inc.*, No. 16-CV-2329 (E.D. La.).

In another Invokana case, the Southern District of Alabama dismissed the plaintiff's complaint as a "shotgun pleading" and then specifically cautioned that "plaintiff should seriously consider not only the defendants' briefing regarding preemption but, as well, how the courts are 'coming down' on this issue." Order at 3 n.3, *Collie v. Janssen Research & Dev., LLC*, No. CA 15-0636-KD-C (S.D. Ala. July 29, 2016). *Collie* subsequently was voluntarily dismissed.

Finally, the court in *Guidry v. Janssen Pharmaceuticals, Inc. et al.*, No. 15-4591, 2016 WL 4508342 (E.D. La. Aug. 29, 2016) granted a motion to dismiss for lack of personal jurisdiction filed by Mitsubishi Tanabe Pharma Corporation and Mitsubishi Tanabe America Development, Inc. *See id.* at *4. That court also found the plaintiff's design defect claims preempted to the extent based on an alleged failure to adopt a safer alternative design after FDA approval, but it allowed the claims to survive under Louisiana law to the extent based on an alleged failure to adopt a safer alternative design before FDA approval. *See id.* at *14.

different prescribing physicians, and different alleged injuries. But the cases also present overlapping factual allegations regarding the alleged risks associated with the use of Invokana and/or Invokamet and would thus benefit from coordinated pretrial proceedings.

Although Janssen acknowledges that there are benefits to be achieved through consolidation, Janssen also recognizes the potential pitfalls of multidistrict ligation. Creating a multidistrict proceeding can encourage the filing of claims of questionable merit and allow those claims to avoid the judicial scrutiny that they otherwise would receive if filed individually. As Judge Clay Land, transferee judge overseeing *In re Mentor Corp. ObTape Transobturator Sling Products Liability Litigation*, recently observed, "the evolution of the [multidistrict litigation] process toward providing an alternative dispute resolution forum for global settlements has produced incentives for the filing of cases that otherwise would not be filed it they had to stand on their own merit as a stand-alone action." *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, MDL Doc. No. 2004, 4:08-md-2004, 2016 WL 4705827, at *1 (M.D. Ga. Sept. 7, 2016). This results in a multidistrict proceeding—established for the purpose of managing cases efficiently to achieve judicial economy—"becom[ing] populated with non-meritorious cases that must nevertheless be managed by the transferee judge." *Id.* To avoid these pitfalls, Janssen requests that the Panel consider the following when determining which cases to consolidate and where to transfer and consolidate those cases.

First, Janssen believes that cases naming only Invokana and/or Invokamet should be consolidated for coordinated pretrial proceedings. This Panel has indicated that it is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold [allegedly] similar products." *In re: Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012). This is often because "the

individual issues that result from the differences among each defendant's [product] with respect to product design, development, testing, warnings, and marketing will predominate over the common issues." *In re Power Morcellator Prods. Liab. Litig.*, 140 F. Supp. 3d 1351, 1353-54 (J.P.M.L. 2015). Here, Invokana and Invokamet belong to a class of pharmaceuticals that, in the United States, include four other single-use and combination prescription medicines marketed and distributed by other companies.[6] Each of these medicines have different labels, prescribing information, and regulatory histories. Any potential efficiencies to be gained through consolidation would be lost when having to contend with discovery involving these multiple products and multiple defendants. Accordingly, Janssen does not believe it would be appropriate to include cases involving claims regarding the other SGLT2 inhibitors among those cases to be consolidated.[7]

Second, when choosing an appropriate transferee judge, it is critical to identify a judge with the knowledge, skill, and experience in the efficient management of complex cases. A potential transferee judge also should demonstrate the willingness and motivation to actively manage the cases and swiftly address issues to ensure that the benefits of consolidation are achieved. A transferee judge also should be willing "to consider approaches that weed out non-meritorious cases early, efficiently and justly." *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 4705827, at *2.

---

[6] In addition to Invokana and Invokamet, SGLT2 inhibitors include Farxiga and Xigduo XR, distributed by AstraZeneca Pharmaceuticals LP; and Jardiance and Glyxambi, marketed by Boehringer Ingelheim Pharmaceuticals, Inc. and Eli Lilly and Company.

[7] Applying this principle to the movants' Amended Schedule of Actions, *House*—a case involving Invokana/Invokamet and Farxiga—should not be included in the consolidation and transfer.

**B.     The District Of New Jersey Is A Suitable Forum For The Multidistrict Litigation.**

Janssen agrees with movants that the District of New Jersey is an appropriate forum for transfer and consolidation of the Invokana cases for pretrial proceedings[8] before Judge Brian Martinotti.[9]

The District of New Jersey generally and Judge Martinotti specifically have significant experience handling multidistrict litigation involving pharmaceutical and medical device products liability actions.  The District of New Jersey has been named the transferee district for multidistrict litigation multiple times, including most recently for the *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*.  *See* Order, *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, & Prods. Liab. Litig.*, MDL No. 2738, Doc. 134 (J.P.M.L. Oct. 4, 2016) ("Talc Transfer Order"); *see generally, e.g.*, *In re Vytorin/Zetia Mktg., Sales Practices & Prods. Liab. Litig.*, 543 F. Supp. 2d 1378 (J.P.M.L. 2008); *In re: Zimmer Durom Hip Cup Prods. Liab. Litig.*, 717 F. Supp. 2d 1376 (J.P.M.L. 2010); *In re: Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 787 F. Supp. 2d 1355 (J.P.M.L. 2011); *In re Plavix Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, 923 F. Supp. 2d 1376 (J.P.M.L. 2013); *In re: Benicar (Olmesartan) Prods. Liab. Litig.*, 96 F. Supp. 3d 1381 (J.P.M.L. 2015).  Likewise Judge Brian Martinotti, while relatively new to the federal

---

[8] While Janssen agrees with the transfer and consolidation of these cases for pretrial purposes, it believes the transferor courts are likely the better forums for trial.

[9] When faced with infighting among plaintiffs over forum selection, the Panel has selected the forum where the majority of cases is pending—especially when defendants and some plaintiffs agree with that forum choice.  *See, e.g.*, *In re: Transitions Lenses Antitrust Litig.*, 730 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010) (choosing Middle District of Florida as the transferee forum, in part because "[a]ll domestic defendants and plaintiffs in a majority of the actions support transfer to this district as a first or alternative choice"); *In re Auto. Refinishing Paint Antitrust Litig.*, 177 F. Supp. 2d 1378, 1379 (J.P.M.L. 2001) (noting "at least some plaintiffs and all domestic defendants support centralization" in the chosen district).

bench, has extensive experience handling large and complex pharmaceutical MDLs while he was on the state bench in New Jersey.[10] Indeed, he was one of three judges in New Jersey designated to handle consolidated litigation and routinely handled multiple state coordinated proceedings at one time.[11] *See, e.g.*, Case Mgmt. Order, *In re: Nuvaring Litig.*, No. BER-L-3081-09 (N.J. Super. Ct. Sept. 18, 2009); Case Mgmt. Order, *In re: Zelnorm Litig.*, No. BER-L-280-09 (N.J. Super. Ct. Sept. 14, 2009); Case Mgmt. Order, *In re Yaz, Yasmin, Ocella Litig.*, No. BER-L-3572-10 (Apr. 26, 2010); Case Mgmt. Order, *In re DePuy ASR Hip Implants Litig.*, No. BER-L-3971-11 (May 10, 2011); Case Mgmt. Order, *In re Stryker Rejuvenate & ABG II Hip Implant Litig.*, No. BER-L-936-13 (Feb. 20, 2013); Case Mgmt. Order*, In re Mirena Litig.*, No. BER-L-4098-13 (July 1, 2013); Notice to the Bar: Multicounty Litigation Reassignment—Pelvic Mesh (N.J. Oct. 31, 2014), *available at* http://judiciary.state.nj.us/notices/2014/n141105b.pdf (last visited Oct. 12, 2016).

Janssen believes that Judge Martinotti exhibits the attributes required for a transferee judge. Judge Martinotti has already brought his significant case management skills to bear in the

---

[10] In fact, Judge Martinotti has published an in-depth discussion of complex litigation in the New Jersey and federal court systems. *See* Hon. Brian R. Martinotti, J.S.C., *Complex Litigation in New Jersey and Federal Courts: An Overview of the Current State of Affairs and a Glimpse of What Lies Ahead*, 44 Loy. U. Chi. L.J. 561 (2012) (attached as Ex. A).

[11] The judge with the next most Invokana cases (four)—Judge Staci Yandle of the Southern District of Illinois—does not have similar experience handling consolidated litigation. And she at one time worked with Roger Denton, one of the lead counsel for Plaintiffs in the cases pending in that court. *Compare Staci Michelle Yandle '87 Confirmed to the U.S. District Court for the Southern District of Illinois*, Vanderbilt Law School, http://law.vanderbilt.edu/news/staci-michelle-yandle-87-nominated-to-serve-on-the-u-s-district-court-for-the-southern-district-of-illinois/ (last visited Sept. 27, 2016) (explaining that Yandle worked at the law firm of Carr Korein Schlichter Kunin Montroy Glass & Bogard from 1987 until 2003), *with Williams v. Fischer*, 581 N.E.2d 744 (Ill. Ct. App. 1991) (listing Roger Denton of the law firm Carr Korein Tillery Kunin Montroy Glass & Bogard as attorney for Plaintiff-Appellant in 1991). While that may not give rise to disqualification or recusal, it does merit consideration as this Panel makes its selection.

cases pending before him. Within weeks of having Invokana cases assigned to him, Judge Martinotti scheduled a status conference on August 29, 2016, at which he directed counsel to meet and confer on, among other things, a short form complaint, short form answer, Plaintiff and Defendant fact sheets, and various discovery orders. (*See* Doc. 21, Case No. 3:16-cv-02386.) The parties recently appeared before Judge Martinotti again on October 5, 2016 to inform him of their progress. No other judge has advanced the pending Invokana cases in such a manner. Judge Martinotti has demonstrated his willingness and motivation to justly and efficiently manage this litigation based on both his past experience and current actions in the cases already on his docket, and he should be given the opportunity to manage the multidistrict litigation.

The District of New Jersey is a good choice for transferee forum for several additional reasons.

First, it currently has the largest number of pending cases—37 of the 57—far exceeding the next closest district by nearly tenfold. This is often a factor that the Panel considers when choosing a transferee forum. *See, e.g.*, *In re Med. Informatics Eng'g, Inc., Customer Data Sec. Breach Litig.*, 148 F. Supp. 3d 1381, 1382 (J.P.M.L. 2015) (noting that the transferee forum contained a majority of the actions in dispute); *In re Air Crash Near Athens, Greece, on Aug. 14, 2005*, 435 F. Supp. 2d 1340, 1342 (J.P.M.L. 2007) (same); *In re Carbon Black Antitrust Litig.*, 277 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) (same); *In re Unumprovident Corp. Secs., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1380 (J.P.M.L. 2003) (same); *In re High Pressure Laminate Antitrust Litig.*, No. 1368, 2000 WL 33180479, at *1 (J.P.M.L. Oct. 6, 2000) (same). And all of the actions in the District of New Jersey are already pending before Judge Martinotti, which makes him a likely choice as transferee judge. *See, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, 148 F. Supp. 3d 1375, 1377 (J.P.M.L. 2015) (selecting Southern

District of California and Judge Sammartino for coordinated proceedings because "[t]he vast majority of the related actions already are pending in this district, most before Judge Janis L. Sammartino, who has related the cases before her"); *In re: Online DVD Rental Antitrust Litig.*, 609 F. Supp. 2d 1376, 1377 (J.P.M.L. 2009) (choosing Judge Hamilton because the "vast majority of the actions" were already pending before her).

Second, the District of New Jersey is a convenient forum given that Janssen maintains its headquarters there.  The Janssen teams responsible for clinical research and development, medical affairs, regulatory approvals and compliance, labeling, marketing and sales of Invokana are based in New Jersey, and individuals with substantive knowledge and decision-making authority regarding the development, labeling, regulatory compliance, marketing, and sale of Invokana in the United States who would be potential witnesses at trial are located in New Jersey.  This is often a decisive factor when choosing a transferee forum.  *See, e.g.*, Talc Transfer Order at 3; *In re Benicar (Olmesartan) Prods. Liab. Litig.*, 96 F. Supp. 3d 1381, 1383 (J.P.M.L. 2015) (selecting District of New Jersey for multidistrict proceedings because "defendants, are headquartered in that district, and thus many witnesses and relevant documents are likely to be found there"); *In re Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prods. Liab. Litig.*, 53 F. Supp. 3d 1379, 1381 (J.P.M.L. 2014) (establishing MDL in Southern District of Indiana in part because "[defendant] Cook is headquartered in Indiana, where relevant documents and witnesses are likely to be found").

Third, the District of New Jersey is geographically accessible to counsel and parties involved in this litigation, making it a good choice for transferee forum.  *See In re Comp. of Managerial, Prof'l & Technical Emp. Antitrust Litig.*, 206 F.Supp. 2d 1374, 1375 (J.P.M.L. 2002) (holding District of New Jersey is an "accessible, urban district[] equipped with the

resources that [a] complex docket is likely to require"); *In re: Nickelodeon Consumers Privacy Litig.*, 949 F. Supp. 2d 1377, 1378 (J.P.M.L. 2013) (same).

### C. In The Alternative, The Northern District Of Illinois Would Also Be An Appropriate Forum.

As an alternative to transferring the Invokana cases to the District of New Jersey before Judge Martinotti, the Northern District of Illinois would be an appropriate forum with Judge Amy St. Eve presiding as transferee judge for several reasons.

First, Judge St. Eve is already assigned to one Invokana case—*Davis v. Janssen Pharmaceuticals, Inc.*, Case No. 3:16-08838. The Panel often considers districts—and judges—with pending cases for potential transfer. *See, e.g.*, *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, MDL Nos. 2705, 2707 & 2708, 2016 WL 3190426, at *3 (J.P.M.L. June 2, 2016) (centralizing litigation before Judge Feinerman who was presiding over one potential tag-along action); *see also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 110 F. Supp. 3d 1358, 1360 (J.P.M.L. 2015) (centralizing in the District of Oregon where only one action was pending, and the other actions were all pending in a different district).

Second, while Judge St. Eve is presently overseeing two multidistrict litigations, both of these involve relatively few cases, leaving her with time to devote to this complex litigation. *See* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-15-2016.pdf (noting assignment to *In re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation* and *In re: Herbal Supplements Marketing and Sales Practices Litigation*, with 7 and 71 actions pending respectively). It is not unusual for the Panel to assign a judge more than two active multidistrict litigations. *See, e.g.*, *id.* (listing Judge Fallon overseeing three multidistrict litigations with more than 11,000 cases pending among the three and Judge Goodwin overseeing seven multidistrict litigations with more than 65,000 cases pending among

the seven).  Moreover, Judge St. Eve is an experienced jurist who has served on the bench for over 14 years and has overseen five multidistrict litigations, giving her the necessary experience and proven track record to oversee this litigation.

Third, the Northern District has demonstrated the ability to efficiently and effectively manage its cases to handle another multidistrict litigation proceeding.  The district ranks 20th out of 94 districts in time of filing to resolution of civil cases, with only 8% of its cases pending for over three years.  *See* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/06/30-1.  This is the type of efficient and effective case management that would be beneficial to a multidistrict litigation.

Fourth, the *Davis* action is pending in Chicago, Illinois, which has two airports with nonstop air service to and from many cities around the country.  Chicago is also centrally located in the country, which mitigates travel burdens for parties and counsel coming from both coasts.

## CONCLUSION

For the foregoing reasons, Janssen respectfully requests that the Panel transfer the Invokana actions either to the District of New Jersey (preferably before Judge Martinotti) or the Northern District of Illinois (preferably before Judge St. Eve) for coordinated pretrial proceedings.

Dated: October 12, 2016

Respectfully submitted,

s/ John Q. Lewis
John Q. Lewis
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:   216.592.5000
Facsimile:    216.592.5009
john.lewis@tuckerellis.com

Counsel for Defendant Janssen Pharmaceuticals, Inc.