**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: INVOKANA (CANAGLIFLOZIN) PRODUCTS LIABILITY LITIGATION | MDL Docket No. 2750 |

**RESPONSE OF ASTRAZENECA PHARMACEUTICALS LP,
ASTRAZENECA LP, ASTRAZENECA AB, ASTRAZENECA PLC, AND
BRISTOL-MYERS SQUIBB CO. TO SECOND MOTION FOR
TRANSFER OF ACTIONS FOR CENTRALIZATION OF PRETRIAL PROCEEDINGS**

Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB,

AstraZeneca PLC, and Bristol-Myers Squibb Co. (collectively, the "Farxiga Defendants")

oppose the Second Motion for Transfer of Action for Centralization of Pretrial Proceedings (Dkt.

No. 30) ("Second Motion") to the extent it seeks consolidation of cases involving sodium-

glucose cotransporter 2 ("SGLT2") inhibitors other than Invokana and/or Invokamet.

Specifically, the Farxiga Defendants oppose transfer of the pending actions involving Farxiga, a

different SGLT2 inhibitor.

The Second Motion is not designed to achieve increased efficiency or convenience.

Instead, it reflects a turf battle between two plaintiffs' law firms.  The initial motion for MDL

transfer and consolidation,[1] filed by Seeger Weiss LLP, seeks an MDL in New Jersey. That

motion includes only cases involving Invokana and/or Invokamet.  The Second Motion, filed by

Johnson Becker, PLLC, seeks an MDL closer to that law firm's home—in Chicago—and

attempts to distinguish its request by requesting an expansion of the proposed MDL to

encompass other medications in the class of SGLT2 inhibitors, including Farxiga and Jardiance.

---

[1] *See* Mot. for Transfer, *In re: Invokana (Canagliflozin) Prods. Liab. Litig.*, MDL No. 2750 (Sept. 20, 2016) (Dkt. No. 1).

It would be neither appropriate nor efficient, however, to include Farxiga and Jardiance cases in an MDL proceeding for Invokana/Invokamet. Although the drugs belong to the same broadly defined SGLT2 "class," they are entirely different chemical compounds—they each have different chemical properties, different labeling, and different regulatory histories. These differences are important. Indeed, these are the very issues that will define the claims and defenses, as well as determine the appropriate scope of discovery, in these matters.

Moreover, while there are more than 60 federal cases involving Invokana and/or Invokamet involving *more than 150 plaintiffs*, there are only six plaintiffs alleging injuries related to Farxiga and five actions related to Jardiance. Adding the Farxiga and Jardiance cases to an MDL proceeding for Invokana/Invokamet would only complicate and delay the resolution of all the cases.

Thus, the Farxiga Defendants respectfully request that the Panel deny the Second Motion to the extent that it seeks to expand the proposed MDL to include Farxiga and Jardiance. In the alternative, if the Panel grants the Second Motion, the Farxiga Defendants request that the cases be consolidated before Judge Brian Martinotti of the District of New Jersey or Judge Amy St. Eve of the Northern District of Illinois.

## BACKGROUND

Farxiga, an FDA-approved prescription drug also known as dapagliflozin, is part of a class of diabetes medications known as SGLT2 inhibitors that are prescribed to help patients control their blood sugar levels by reducing the amount of glucose that is reabsorbed into the bloodstream through the kidneys. Other SGLT2 inhibitors include:

- **Invokana**, a drug developed and marketed by Janssen, with the generic name of canagliflozin;

- **Invokamet**, also a Janssen product, which combines canagliflozin and metformin;

- **Jardiance**, a drug developed and marketed by Boehringer Ingelheim Pharmaceuticals, Inc. and Eli Lilly and Company, with the generic name of empagliflozin;

- **Glyxambi**, also by Boehringer Ingelheim Pharmaceuticals, Inc. and Eli Lilly and Company, which combines empagliflozin and linagliptin; and

- **Xigduo XR**, an extended-release formulation of dapagliflozin and metformin.

There are over 70 actions pending in federal court regarding SGLT2 inhibitors involving more than 150 plaintiffs.  Of these, all but 11 cases involve only Invokana and/or Invokamet.  There are only six cases involving Farxiga:  *Foran v. Bristol-Myers Squibb Co. et al.*, Case No. 1:16-cv-471 (S.D. Ala.); *House v. Janssen Pharms., Inc. et al.*, Case No. 3:15-cv-894 (W.D. Ky.); *Quintanilla v. Bristol-Myers Squibb Co. et al.*, Case No. 2:16-cv-172 (S.D. Tex.); *Young v. Bristol-Myers Squibb Co. et al.*, Case No. 4:16-cv-108 (N.D. Miss.); *Gray v. Bristol-Myers Squibb Co. et al.*, Case No. 2:16-cv-7792 (C.D. Cal.); and *Warner v. Bristol-Myers Squibb Co. et al.*, Case No. 1:16-cv-8187 (S.D.N.Y.) (hereinafter, the "Farxiga cases").[2]  Of these six Farxiga cases, only one—*House v. Janssen Pharms., Inc. et al.*—is a "combination" case that involves claims regarding Farxiga and Invokana.  There are also five cases involving Jardiance, none of which involves Farxiga.

---

[2] The Second Motion lists four Farxiga cases: *Foran v. Bristol-Myers Squibb Co. et al.*, Case No. 1:16-cv-471 (S.D. Ala.); *House v. Janssen Pharms., Inc. et al.*, Case No. 3:15-cv-894 (W.D. Ky.); *Quintanilla v. Bristol-Myers Squibb Co. et al.*, Case No. 2:16-cv-172 (S.D. Tex.); and *Young v. Bristol-Myers Squibb Co. et al.*, Case No. 4:16-cv-108 (N.D. Miss.).  Since the filing of the Second Motion, two additional Faxiga cases have been filed: *Gray v. Bristol-Myers Squibb Co. et al.*, Case No. 2:16-cv-7792 (C.D. Cal.); and *Warner v. Bristol-Myers Squibb Co. et al.*, Case No. 1:16-cv-8187 (S.D.N.Y.).

In the Farxiga cases, the plaintiffs allege that the Farxiga Defendants failed adequately to warn about the risks of diabetic ketoacidosis ("DKA") and acute kidney injury associated with Farxiga and, as a result, suffered those personal injuries.  Motion to dismiss briefing is either complete or in progress.  No court has issued any rulings on the Farxiga Defendants' motions to dismiss.  Other than one plaintiff serving interrogatories and requests for production, there has been no discovery in any of the Farxiga cases.

## ARGUMENT

Centralization of cases is appropriate where it will "be for the convenience of [the] parties . . . and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).  The Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products."  *In re: Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012).  This hesitation stems from the fact that industry-wide centralization generally does not "serve the convenience of the parties and witnesses or further the just and efficient conduct of th[e] litigation."  *Id.* at 1379.  This same reasoning applies here.

## I.   Individual Issues About Each Drug Will Predominate Over Common Issues.

In deciding whether to centralize actions on an industry-wide basis, the Panel pays particular attention to whether "the individual issues that result from the differences among each defendant's [product] . . . will predominate over the common issues" about the products.  *In re: Power Morcellator Prods. Liab. Litig.*, 140 F. Supp. 3d 1351, 1353 (J.P.M.L. 2015).  At the heart of these actions are the core issues of whether and when each defendant knew or should have known about the risks associated with a particular drug and whether that defendant adequately warned about those risks based on the available science.  These critical issues will be determined based on the development, testing, warnings, and regulatory history—which are different for

each drug.  Thus, the individual issues as to each drug will predominate over any common issues.

Farxiga was subject to an entirely different regulatory approval process than either Invokana or Jardiance.  For example, after the initial application for FDA approval, the Farxiga Defendants conducted additional testing at the FDA's request.  This additional testing—unique to Farxiga—did not reveal any data suggesting that Farxiga was associated with DKA, a fact that goes straight to whether the Farxiga Defendants knew or should have known about an alleged risk of DKA.

Farxiga, Invokana, and Jardiance also have different FDA-approved labels and warnings. For example, the labels vary with regard to patients with renal impairment, which is measured by a patient's estimated glomerular filtration rate, or eGFR.  Farxiga is recommended for patients with only mild renal disease, meaning patients with an eGFR of 60 or greater.  *See* Farxiga Prescribing Information, Dosage and Administration, at 1–2 (Jan. 8, 2014).[3]  By contrast, Invokana is recommended for patients with mild ***and moderate*** renal impairment, meaning patients with an eGFR of 45 or greater.  *See* Invokana Prescribing Information, Dosage and Administration, at 1-2 (Mar. 29, 2013).[4]  One consequence of this difference is that patients taking Invokana may have had worse kidney function at baseline than those taking Farxiga.  This material difference in patient populations is just one example of how individual issues will predominate on the issues of warnings and causation—issues at the core of these cases.

These circumstances are similar to *In re: Power Morcellator*, where the Panel decided not to centralize actions on an industry-wide basis.  Like here, one set of defendants in the *In re:*

---

[3] Available at http://www.accessdata.fda.gov/drugsatfda_docs/label/2014/202293s000lbl.pdf.

[4] Available at http://www.accessdata.fda.gov/drugsatfda_docs/label/2013/204042s000lbl.pdf.

*Power Morcellator* actions was involved in the vast majority of the pending actions, and other defendants were involved in only a limited number of actions.  140 F. Supp. 3d at 1352-54.   In reaching its decision not to consolidate on an industry-wide basis, the Panel concluded "that the individual issues that result from the differences among each defendant's power morcellator with respect to product design, development, testing, warnings, and marketing will predominate over the common issues."  *Id*. at 1353.  So too here.  The individual issues arising out of the unique molecular structure of each SGLT2 inhibitor and the differences among each drug's development, testing, warnings, and regulatory history will predominate over any common issues.

Plaintiffs rely on *In re: AndroGel Products Liability Litigation*, 24 F. Supp. 3d 1378 (J.P.M.L. 2014) in support of their request for industry-wide centralization, but that case is inapposite.  All the defendants were selling the exact same medicine: testosterone.  The defendants' products only differed in terms of how that medicine was delivered to patients.  *In re: AndroGel*, 24 F. Supp. 3d at 1378-79; *see also* FDA Drug Safety Communication: FDA evaluating risk of stroke, heart attack and death with FDA-approved testosterone products (Jan. 31, 2014).[5]  Here, by contrast, Farxiga, Invokana, and Jardiance are different medications, each with its own unique molecular structure.  *AndroGel* therefore does not apply here.

## II.      Consolidation Would Be Less Efficient.

The Panel should reject industry-wide centralization because it will not "serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation."  *In re: Yellow Brass*, 844 F. Supp. 2d at 1379; *see also In re: Power Morcellator*, 140

---

[5] Available at http://www.fda.gov/Drugs/DrugSafety/ucm383904.htm.

F. Supp. 3d at 1353-54.  To the contrary, industry-wide centralization will do the opposite for several reasons.

        1.        Combining discovery of different products into an industry-wide MDL would be less efficient and more expensive because it would require defendants to be involved with unrelated cases.  Instead of focusing on discovery related to their particular product, each defendant would have to coordinate discovery with multiple defendants and cases that have nothing to do with their product.  Even if a defendant attempts to focus on its own cases, it still would be required to participate to some extent in unrelated cases.  For example, each defendant would need to monitor all the issues before the MDL, even if not directly related to a particular product, to assess the possibility of broader implications.  Likewise, counsel for defendants likely would need to attend depositions of other defendants' witnesses to protect their clients' interests.  For example, a witness for another defendant may make statements in a deposition that implicates the entire class of drugs.  Moreover, the MDL court's case management orders in an Invokana MDL, with more than 150 plaintiffs, would be designed to deal with the complexities and scope of that litigation, not six Farxiga cases.  Yet the Farxiga Defendants would still be forced to litigate their cases under a case management order designed to address Invokana/Invokamet issues that do not even apply to the Farxiga cases.  The reality is that consolidation will lead to significantly *more* attorney hours—and *more* expense—because defendants will have to spend time not only defending their own clients, but also monitoring and coordinating with unrelated cases involving other products in an industry-wide MDL.

        These inefficiencies are exacerbated by the fact that the Farxiga actions and the Invokana/Invokamet cases "are at substantially different procedural stages."  *In re: Cymbalta (Duloxetine) Prods. Liab. Litig. (No. II)*, 138 F. Supp. 3d 1375, 1376 (J.P.M.L. 2015).   There

has been no discovery in any of the Farxiga actions.  Several of the Invokana/Invokamet cases, by contrast, have made substantial progress in discovery, including the entry of Protective Orders, agreement on protocols for electronically-stored information, and the actual production of significant volumes of documents.  *See* Defendant Janssen Pharmaceuticals, Inc.'s Response In Opposition To The Schroeder Plaintiffs' Second Motion For Transfer Of Actions For Centralization Of Pre-Trial Proceedings at 6 (October 24, 2016) (Dkt. No. 45).  As a result, centralization would not further the efficiency purposes of Section 1407.  *See In re: CVS Caremark Corp. Wage & Hour Emp. Practices Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (fact that "significant amount of discovery has already taken place" in some actions but "little, if any, pretrial activity has occurred" in other actions weighed against centralization); *In re: Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1378 (J.P.M.L. 2010) (declining to centralize actions that were at "widely varying procedural stages").

2.      Another case management complication arising from industry-wide consolidation would be the protection of confidential information among competing defendants.  As the Panel observed in deciding that industry-wide consolidation was inappropriate in another matter, "the introduction of competing defendants into the litigation, and the need to protect trade secret and confidential information from full disclosure to the parties, would complicate case management" and likely contribute to "inefficiencies and delay."  *In re: Tropicana Orange Juice Mktg. & Sales Practices Litig.*, 867 F. Supp. 2d 1341, 1342 (J.P.M.L. 2012).  The Farxiga Defendants, Janssen, and the Jardiance Defendants are competitors that have devoted tremendous time and resources to developing, testing, and marketing their respective drugs, and these efforts continue to this day.  Much of their work in this regard is highly confidential and proprietary, and the parties will understandably wish to protect their "trade secret and confidential information from full

8

disclosure" to the other defendants.  *Id.*  As in *In re: Tropicana*, protecting each defendants' confidential and proprietary information will needlessly complicate case management by requiring a special protective order and other steps necessary to prevent disclosure.  *See In re: Spray Polyurethane Foam Insulation Prods. Liab. Litig.*, 949 F. Supp. 2d 1364, 1364 (J.P.M.L. 2013) ("[P]lacing direct competitor manufacturer defendants into the same litigation would require protecting trade secret and confidential information from disclosure to all parties and complicate case management.").  If there is an Invokana/Invokamet-only MDL, there will be no need for such protections in the MDL.

      3.     History has shown that an industry-wide MDL proceeding does not lead to the efficiencies claimed by Plaintiffs.  One reason is that plaintiffs routinely attempt to undermine MDL efficiencies by hedging their bets in state court proceedings.  Specifically, they join sham non-diverse defendants to destroy the federal court's jurisdiction and prevent transfer to the MDL.  As one court recognized:

> The MDL procedure is designed to direct judicial resources and the parties' pretrial litigation efforts more efficiently to benefit both plaintiffs and defendants. If plaintiffs can escape the MDL by joining multiple, unconnected and non-diverse parties in a state court of their choice, they defeat the purposes of the MDL and deny defendants their right to removal.

*In re: Propecia (Finasteride) Prod. Liab. Litig.*, Case Nos. 12-MD-2331, 12-cv-2049, 2013 WL 3729570, at *8 (E.D.N.Y. May 17, 2013).

      Indeed, although Johnson Becker, PLLC, is now invoking the merits of industry-wide centralization in the name of preventing inconsistent rulings and eliminating duplicative discovery, it has actively hedged against unfavorable MDL rulings in previous litigations.  In the Incretin litigation—the same litigation that Plaintiffs cite in support of their motion—Johnson Becker filed hundreds of cases in California state court after the MDL judge entered an Order

that they deemed unfavorable—an Order limiting discovery to address general causation as a threshold issue. *See* Ex. 1 (Feb. 18, 2014 Order); Ex. 2 (Mar. 25, 2014 Order confirming that discovery is limited to general causation).  Thus, in early 2015, they joined more than 200 plaintiffs in three state court complaints. *See* Exs. 3-5. They avoided federal jurisdiction—and the MDL—by naming a non-diverse distributor, McKesson Corporation, that had not been included in the federal cases. *Id.*  Moreover, the plaintiffs' firms in the Incretin litigation elected *not* to include in the MDL one Incretin product, Onglyza, after the MDL judge made his unfavorable rulings.  This forum-shopping was a transparent effort to avoid the MDL's rulings and undermined the consistency Johnson Becker now extols.

Instead, the real "efficiency" Plaintiffs are seeking is an opportunity to stockpile cases in the MDL in the hopes of obtaining a global resolution with minimal effort.  As one court correctly recognized:  "the evolution of the MDL process toward providing an alternative dispute resolution forum for global settlements has produced incentives for the filing of cases that otherwise would not be filed if they had to stand on their own merit as a stand-alone action."  *In re: Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, Case No. 08-MD-2004, --- F. Supp. 3d ---, 2016 WL 4705827, at *1 (M.D. Ga. Sept. 7, 2016).  Moreover, as noted above, the purpose of the Second Motion is not to promote efficiency, but rather to further the particular interests of one plaintiffs' law firm, which is not a legitimate reason for an MDL proceeding. *See In re: CVS Caremark*, 684 F. Supp. 2d at 1379 ("[W]here a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statute, we would certainly find less favor with it.")  Thus, although Plaintiffs' proposed brand of "efficiency" may benefit Plaintiffs' counsel, it is actually less efficient and would lead to more cases.

**III.    Voluntary Cooperation In the Six Farxiga Actions Is More Efficient.**

There are only six Farxiga cases pending nationwide in federal court.  An industry-wide MDL is unnecessary because the parties and courts can effectively manage those cases through voluntary cooperation.  As the Panel has observed, voluntary cooperation is particularly well-suited to minimize duplicative discovery and prevent inconsistent rulings when there is a limited number of cases and common counsel.  *See In re: Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 243-44 (J.P.M.L. 1978) (denying consolidation of three actions because "suitable alternatives to Section 1407 transfer are available in order to minimize the possibility of duplicative discovery" and "to minimize the possibility of conflicting pretrial rulings").  In the six cases involving Farxiga, the Farxiga Defendants are represented by common counsel (Williams & Connolly LLP) that can coordinate with the plaintiffs' counsel in the six Farxiga actions.

The Panel has noted that "[v]arious mechanisms are available to minimize or eliminate the possibility of duplicative discovery in the absence of an MDL."  *In re: Colgate Optic White Toothpaste Marketing & Sales Practices Litig.*, MDL No. 2735, --- F. Supp. 3d --- , 2016 WL 5846031, at *1 (J.P.M.L. Oct. 4, 2016).  Such methods include filing notices of deposition in all related actions, stipulating that relevant discovery may be used in all related actions, and directing courts to coordinate pretrial tasks.  *Id.*; *see also Manual for Complex Litigation* § 20.14 (4th ed. 2016) (listing methods for informal coordination among courts in absence of an MDL).  The Farxiga Defendants will work with the plaintiffs' counsel to implement such measures in the six Farxiga actions.  Thus, "[g]iven the few involved counsel and limited number of actions, informal cooperation among the involved attorneys is both practicable and preferable to centralization."  *In re: Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*, 38 F. Supp. 3d 1380, 1381 (J.P.M.L. 2014).

The number of Farxiga actions is expected to remain small.  Under the Plaintiffs' own theory, there is a narrow window of time for plaintiffs to have claims related to Farxiga.  Farxiga came on the market in January 2014, and the FDA made its announcement about DKA in May 2015.  Furthermore, the fact that there are only six pending actions in federal court involving claims related to Farxiga more than a year after the FDA's announcement in May 2015 belies Plaintiffs' claim that they anticipate a large number of future cases.  And the Second Motion's "allu[sion] to the prospect of additional actions" "does not create a persuasive reason for transfer."  *In re: Zimmer, Inc., Centralign Hip Prosthesis Prods. Liab. Litig. (No. II)*, 366 F. Supp. 2d 1384, 1385 (J.P.M.L. 2005); *see also In re: Lipitor (Atorvastatin Calcium) Marketing, Sales Practices & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013) ("[W]e are disinclined to take into account the mere possibility of future filings in our centralization calculus.").  Thus, Plaintiffs have failed to meet its "heavier burden to demonstrate that centralization is appropriate" "where only a few actions are involved."  *In re: Colgate Optic White Toothpaste*, 2016 WL 5846031, at *1.

## IV.	The Lack of Combination Cases Weighs Against Consolidation.

In previous cases where the Panel decided to consolidate on an industry-wide basis, the presence of a critical mass of combination cases (i.e., cases where the plaintiff uses more than one drug or product) played a prominent role in the Panel's decisions.  For instance, in *In re: Incretin Mimetics Products Liability Litigation*, 968 F. Supp. 2d 1345 (J.P.M.L. 2013), the Panel stated that "[s]everal plaintiffs took more than one of the drugs at issue, which suggests that discovery specific to the plaintiffs in those cases will involve many of the same or substantially similar documents and witnesses."  968 F. Supp. 2d at 1346-47.  Similarly, in *In re: AndroGel*, the Panel noted that "a number of plaintiffs used more than one testosterone replacement therapy" and that consolidating only cases involving a particular drug "might result in a *de facto*

industry-wide centralization as cases involving multiple drugs become part of the MDL." *In re: AndroGel*, 24 F. Supp. 3d at 1379.

These factors are not present here.  There is a striking absence of cases involving plaintiffs that took more than one of the drugs at issue.  There are only *three* such combination cases.[6]  And only *one* case—*House v. Janssen Pharms., Inc. et al.*—involves claims regarding Farxiga and Invokana.  The Panel has recognized that the presence of this minimal number of combination cases points against industry-wide centralization.  *See In re: Power Morcellator*, 140 F. Supp. 3d at 1354 (no industry-wide centralization where there were only two combination cases).  Thus, the Farxiga Defendants agree with Janssen's proposal to exclude combination cases from any MDL (as well as cases involving only Farxiga or Jardiance).  This will result in the most efficient resolution of the actions.

## V.    If the Panel Approves Industry-Wide Centralization, the District of New Jersey and the Northern District of Illinois Are Appropriate Venues.

If the Panel chooses to centralize actions involving Farxiga, the Farxiga Defendants propose, for the reasons stated in Janssen's Response, that the cases should be consolidated before Judge Brian Martinotti of the District of New Jersey or before Judge Amy St. Eve of the Northern District of Illinois.  *See* Janssen's Resp. at 7-12.  For the reasons stated by Janssen, the Farxiga Defendants oppose consolidation in the Southern District of Illinois before Judge Stacie Yandle or Judge David Herndon.  *Id.* at 8 n.11.

---

[6] To clarify, these cases do not involve "combination therapy" where a patient takes more than one medication at the same time.  Second Motion at 2.  The SGLT2 inhibitors at issue are not indicated for such simultaneous use.

## CONCLUSION

Based on the foregoing, the Farxiga Defendants respectfully request that the Panel deny the Second Motion to the extent it seeks consolidation of cases involving drugs other than Invokana and/or Invokamet, including Farxiga.

Respectfully submitted,

**ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, ASTRAZENECA AB, ASTRAZENECA PLC, AND BRISTOL-MYERS SQUIBB CO.**

DATED: October 24, 2016

/s/ Stephen D. Raber
Stephen D. Raber
Ana Reyes
Richmond T. Moore
WILLIAMS & CONNOLLY LLP
725 12th Street N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
sraber@wc.com
areyes@wc.com
rtmoore@wc.com

*Attorneys for Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, AstraZeneca PLC, and Bristol-Myers Squibb Co.*