BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE: INVOKANA (CANAGLIFLOZIN)
PRODUCTS LIABILITY LITIGATION

MDL No. 2750

## INTERESTED PARTY RESPONSE AND MEMORANDUM OF LAW IN SUPPORT OF TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

### ORAL ARGUMENT REQUESTED

Plaintiff David Gray (hereafter, "Plaintiff") respectfully submits this Interested Party Response and Memorandum of Law to the Judicial Panel on Multidistrict Litigation ("the Panel") in partial support and partial opposition of the original Motion to Transfer and in support of the Second Motion to Transfer filed in this MDL. Specifically, Plaintiff seeks transfer of all actions pending in federal court for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407 alleging injury as a result of ingesting any of the three SGLT-2 inhibitor drugs. For the reasons set forth below, Plaintiff requests the Panel grant the Schroeder Plaintiffs' Second Motion for Transfer of Actions. *See* Dkt. No. 30-1. Plaintiff further requests the Panel grant the Schroeder Plaintiffs' motion to transfer all cases to the United States District Court for the Northern District of Illinois and appoint the Honorable Amy J. St. Eve or the Honorable Gary Feinerman to preside over the SGLT-2 inhibitor lawsuits.

1

## **NATURE OF THE CASE**

### A.  SGLT-2 INHIBITORS

SGLT-2 inhibitors are a new class of drugs for treatment of type 2 diabetes that inhibit glucose reabsorption in the kidneys, excreting the extra sugar by passing it through the user's urine and thereby decreasing glucose in the user's bloodstream. The SGLT-2 inhibitors[1] are indicated for use for treatment of type 2 diabetes, even though the defendant manufacturers of these products extensively promoted the drugs off-label for weight loss and blood pressure control. These extensive marketing campaigns have helped dramatically increase the market share for SGLT-2 inhibitors in the type 2 diabetes market since their introduction in 2013.[2]

These drugs have the same mechanisms of action and, thus, can cause many of the same kinds of injuries. Two injuries this MDL should focus on are diabetic ketoacidosis ("DKA") and acute kidney failure. And, despite their knowledge that these drugs could cause serious injuries, each of the defendants named in the lawsuits against SGLT-2 inhibitor manufacturers failed to warn the public and/or healthcare providers of the potential for SGLT-2 inhibitors to cause these severe injuries, and only began warning about these risks after the FDA required them to do so.

---

[1] The SGLT-2 inhibitors are Invokana (canagliflozin), Farxiga (dapagliflozin), and Jardiance (empagliflozin) and combinations of these three drugs.

[2] In the second quarter of 2016, SGLT-2 inhibitors posted a combined $634.1 million in worldwide sales (Invokana – $383 million; Farxiga –$211 million; and Jardiance - $40.1 million).

### B. INJURIES CAUSED BY SGLT-2 INHIBITORS

#### a. Diabetic Ketoacidosis

The FDA has issued two warnings about SGLT-2 inhibitors causing DKA in their users. The first warning, on May 15, 2015, stated that the FDA had identified 20 reported adverse events linking DKA with SGLT-2 inhibitor usage. At the same time as the FDA was doing its review, case reports and medical literature was coming out linking SGLT-2 inhibitors with DKA. Defendants knew or should have known that SGLT-2 inhibitors could – and in fact did – cause DKA. In fact, Janssen's clinical trials' case reports showed the link between Invokana and elevated ketones. And after their May 2015 warning, the FDA continued their observations of the SGLT-2 class of drugs and on December 4, 2015, issued another warning and label change stating SGLT-2 inhibitors can cause DKA. Defendants in each of these actions knew or should have known that the SGLT-2 inhibitors could cause these injuries.

#### b. Acute Kidney Injury

As discussed above, SGLT-2 inhibitors inhibit glucose reabsorption in the kidneys, and the user excretes the extra sugar by passing it through their urine and thereby decreasing glucose in the user's bloodstream. Unfortunately for the SGLT-2 inhibitor users, reducing the sugar in the bloodstream leads to more glucose that must be processed by the kidneys. Thus, SGLT-2 inhibitor users' kidneys must work harder than normal to excrete all the increased urine produced. This increase in urine production requires the kidneys in diabetics, a population whose kidney function is already compromised, to work even harder than ever before. Consequently, significant kidney injuries occurred in users of SGLT-2 inhibitors. These injuries prompted recent action from the FDA.

Between March 2013 and October 2015, the FDA received reports of 101 confirmable cases of acute kidney injury with use of Invokana or Farxiga, with some of the cases requiring hospitalization and dialysis. On June 14, 2016, the FDA issued a Drug Safety Communication warning of this connection, that Invokana and Farxiga can cause acute kidney injury. The FDA also stated, "This number includes only reports submitted to FDA, so there are likely additional cases about which we are unaware."

Each defendant who manufactured an SGLT-2 inhibitor knew or should have known of the potential for SGLT-2 inhibitors to cause serious injuries such as DKA and acute kidney failure. Instead of conducting appropriate tests or communicating appropriate warnings, the defendants concealed their knowledge that these injuries were more likely to occur continued (and continue to) aggressively promote SGLT-2 inhibitors. Because of Defendants' inaction or concealment, patients around the country, including the Original Movants, the Schroeder Plaintiffs, and Plaintiff David Gray, suffered severe injuries as a result of consuming SGLT-2 inhibitors.

## ARGUMENT

### A. COORDINATION OF THE PRETRIAL PROCEEDINGS OF THE SGLT-2 INHIBITOR CASES IS APPROPRIATE HERE GIVEN THE INEVITABLE DUPLICATION OF DISCOVERY, EXPERT WITNESSES, AND THE FDA'S DRUG SAFETY COMMUNICATIONS INVOLVED IN EACH ACTION

At the discretion of the Panel, civil actions pending in different federal districts may be transferred to a centralized district. Transfer is appropriate if the Panel determines that consolidation would serve "the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a) (2010). These actions, as well as the likely future filings contain many of the same basic facts, the same theories of liability,

and many of the same scientific facts. Consolidation in one federal district will promote conservation of judicial resources, avoid potentially endless duplication of discovery, and prevent inconsistent or repetitive rulings. *See e.g., In re Janus Mutual Funds Investment Litigation*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004); *see also In re: Kugel Mesh Hernia Patch Prods. Liab. Litig*., 493 F. Supp. 2d 1371, 1372 (J.P.M.L. 2007); *In re Fosamax Prods Liab. Litig.*, 444 F. Supp. 2d 1347 (J.P.M.L. 2006). Expert depositions will only be required to be taken once, document production will be centralized, the parties will avoid inconsistent rulings, and travel will be minimized as Defendants will only have to appear in one location rather than multiple districts around the country. Consolidation in one district will allow the parties to focus their efforts in one forum.

In the SGLT-2 inhibitor cases, a class-wide, multi-manufacturer pretrial coordination best deals with the factors considered by the Panel. Having all of the defendant SGLT-2 manufacturers in one courtroom will prevent inconsistent rulings, will allow claims regarding injuries caused by drugs with substantially the same mechanisms of action to be litigated in one courtroom and curtail the wasting of judicial resources, and coordinate cases that would ultimately be coordinated anyway in light of the claimants who used two or more SGLT-2 inhibitors and will prevent a *de facto* industry-wide MDL. *See In re: Incretin Mimetics Prods. Liab. Litig.,* 968 F. Supp. 2d 1345 (J.P.M.L. 2013) (coordinating pretrial discovery in claims against four defendants involving four type 2 diabetes medications); *see also In re: AndroGel Products Liab. Litig.,* 24 F. Supp. 3d 1378 (J.P.M.L. 2014) (consolidating claims against multiple defendants involving six testosterone replacement therapy drugs).[3] The common theme

---

[3] Recognizing the judicial efficiency of the process, other MDLs have involved multiple products and manufacturers. *See In re Welding Rod Products Liab. Litig.,* 269 F. Supp. 2d 1365

in each of these cases was that at least a few of the plaintiffs in some complaints alleged the use of one or more common product. Coordination of all of the claims against the SGLT-2 inhibitor manufacturers will be the best use of judicial resources, the best use of the parties' recourses, and will be the most efficient way to proceed with all of these SGLT-2 inhibitor cases.

In addition to the fact that each of the claims filed against Defendants involves the same drug and assert similar theories of liability. These theories include: product liability – failure to warn, negligence, and product liability – strict liability.  Each of these theories of liability can have different applications depending on the rules and laws of an individual forum and the judge who applies these theories. Consolidating the claims will promote a just application of the law for all plaintiffs throughout the country, and would prevent the possibility (and probability) of conflicting rulings from various courts around the country.

### B. CONSOLIDATION BEST SERVES THE COMBINED INTERESTS OF THE PARTIES IN THE NORTHERN DISTRICT OF ILLINOIS.

In determining an appropriate forum for transfer, the Panel evaluates a number of factors including: a district that has a related action pending on its docket, where the cost and inconvenience will be minimized, is convenient to the parties and the experience, skill and caseloads of the available judges. *Manual for Complex Litigation (Fourth)*, § 22.33, pp. 367.  In light of these considerations, Plaintiff contends transfer is appropriate to the Northern District of Illinois.  The Northern District of Illinois would be the optimal forum for consolidation of these actions.  At the outset, two of the plaintiffs who are included in the related actions in this matter,

---

(J.P.M.L. 2003) (claims against more than ten individual defendants were coordinated in which plaintiffs alleged personal injuries caused by exposure to welding fumes); *In re: Am. Med. Sys., Inc., Pelvic Repair System Products Liab. Litig.,* 844 F. Supp. 2d 1359 (J.P.M.L. 2012) (centralizing actions involving allegations of defect in various models of pelvic surgical mesh products manufactured by three groups of manufacturers).

including one of the plaintiffs in the group of Schroeder Plaintiffs who brought this multi-manufacturer Motion for Transfer of Actions, have cases on file in the Northern District of Illinois.

Additionally, the Northern District of Illinois does not have an overloaded docket. Among their 32 district judges there are only 12 MDLs currently pending in the District. Among those judges, the Honorable Amy J. St. Eve and the Honorable Gary Feinerman are impressive jurists. Judge St. Eve has been a federal judge for nearly 15 years and has overseen multiple MDLs in the past (although never a pharmaceutical MDL like this one), and Judge Feinerman has been on the bench for more than six years and while he has yet to have an MDL, he has developed an equitable style befitting a federal judge and would be a fine selection to oversee this litigation. Finally, Chicago, with its two major airports, two hubs of major airlines, centralized location spread among all of the parties, is a very convenient location as well.

Taking all of these factors into consideration, the Northern District of Illinois is the appropriate venue to consolidate the pretrial proceedings of the SGLT-2 inhibitor litigation.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Panel to grant the Schroeder Plaintiffs' Second Motion for Transfer of Actions pursuant to 28 U.S.C. §1407 to the

\\\
\\\
\\\
\\\
\\\

Northern District of Illinois, and appoint Judge Amy St. Eve or Judge Gary Feinerman to preside over the SGLT-2 inhibitor multidistrict litigation.

                                      Respectfully Submitted,

Dated: October 24, 2016        By:    /s/ Caleb Marker
                                      Caleb Marker
                                      ZIMMERMAN REED LLP
                                      2381 Rosecrans Ave., Suite 328
                                      Manhattan Beach, CA 90245
                                      Telephone: (877) 500-8780
                                      Facsimile: (877) 500-8781
                                      Email: caleb.marker@zimmreed.com

                                      *Attorney for Plaintiff David Gray*