**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

————————————————————————

|  |  |  |
|---|---|---|
|  | ) |  |
| **IN RE: INVOKANA (CANAGLIFLOZIN)** | ) | **MDL NO. 2750** |
| **PRODUCTS LIABILITY LITIGATION** | ) |  |
| ———————————————————————— | ) |  |

**MEMORANDUM OF LAW IN SUPPORT OF INTERESTED PARTY RESPONSE
PURSUANT TO JPML RULE 6.2(e) AND 28 U.S.C. § 1407**

**ORAL ARGUMENT REQUESTED**

Plaintiffs Catherine Faedtke and David Cape (hereinafter "Plaintiffs")[1] respectfully submit this Memorandum of Law in Support of Interested Party Response Pursuant to JPML Rule 6.2(e) and 28 U.S.C § 1407 supporting the Schroeder Plaintiffs' Motion to Transfer (Dkt. No. 30).

**NATURE OF THE CASE**

A.    *SGLT-2 Inhibitors*

Historically, type 2 diabetics took medications that eliminated glucose from their blood stream, manipulated the body's sensitivity to insulin or caused the body to secrete insulin.  Sodium Glucose Cotransporter 2 ("SGLT-2") inhibitors have a different mechanism of action.  Unlike historical treatment options, SGLT-2 inhibitors obstruct the body's glucose absorption and allow excess sugars to be disposed of by the kidneys.  SGLT-2 inhibitors first hit the market in 2013. There are five principal manufactures and developers of SGLT-2 drugs:    1) Janssen Pharmaceuticals, Inc. (Invokana – canagliflozin); Bristol-Myers Squibb (Farxiga - dapagliflozin); AstraZeneca (Farxiga); Eli Lilly and Company (Jardiance - empagliflozin); and Boehringer Ingelheim Pharmaceuticals, Inc. (Jardiance).    Although the Food and Drug Administration

---

[1]  *Catherine Faedtke v. Janssen Pharmaceuticals, Inc. f/k/a Janssen Pharmaceutica Inc. f/k/a Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 1:16-cv-9441 (NDIL); *David Cape v. Janssen Pharmaceuticals, Inc. f/k/a Janssen Pharmaceutica Inc. f/k/a Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 1:16-cv-01406-JES-JEH (CDIL);

("FDA") only cleared SGLT-2 inhibitors soles for the treatment of type 2 diabetes, Defendants widely advertised their SGLT-2 inhibitors to provide weight-loss benefits to patients. Because weight plays a significant role in the management of type 2 diabetes, Defendants' deceptive off-label weight-loss promotion dramatically increased the interest and prescription of SGLT-2 inhibitors by physicians.

### B.    Defendants' Knowledge of SGLT-2 Inhibitor Safety Risks

Before Plaintiffs took SGLT-2 inhibitors, Defendants knew that the SGLT-2 class was associated with the risk of serious injuries. Despite their knowledge of the potential for these drugs to cause serious injuries, Defendants failed to provide safety warnings to the public and/or healthcare providers. Since SGLT-2 inhibitors were first cleared by the FDA, evidence has shown that the class of drugs can cause serious injuries including diabetic ketoacidosis and/or kidney failure.[2][3] Defendants knew or should have known of the risk of ketoacidosis and acute kidney failure associated with their SGLT-2 inhibitors. Rather than taking action and warning the public and healthcare professionals, doubled down in their aggressive SGLT-2 marketing campaigns and concealed the knowledge.

Only after the FDA took action and widely disseminated this important safety information did Defendants begin providing appropriate warnings to the public and/or healthcare providers. Unfortunately, Defendants' actions and delay came with serious and sometimes fatal implications for patients ingesting SGLT-2 inhibitors. Ms. Faedtke, Mr. Cape and each Plaintiff identified in

---

[2]   5/15/2015 – FDA issues a Drug Safety Communication warning that each drug in the SGLT-2 class could cause diabetic ketoacidosis, a condition that most commonly occurs in patients with type 1 diabetes. http://www.fda.gov/Drugs/DrugSafety/ucm446845.htm.

[3]   6/14/2016 – FDA issues a Drug Safety Communication warning that Invokana, Invokamet, Farxiga and Xigduo XR could cause acute kidney injury and had received reports of more than 100 confirmable acute kidney injury cases. http://www.fda.gov/Safety/MedWatch/SafetyInformation/SafetyAlertsforHumanMedicalProducts/ucm506554.htm

the Schedules of Action filed in relation to this MDL request have made allegations that they suffered diabetic ketoacidosis or kidney failure which was caused by the ingestion of one or a combination of SGLT-2 inhibitors.

### C.   *Multi-Manufacturer Ingestion/Farxiga and Jardiance Ingestion*

Like many other health conditions, type 2 diabetics are often prescribed and take multiple medications to treat the condition.  This is referred to as combination therapy and applies equally to SGLT-2 inhibitors.  Because physicians often prescribe a combination of two or more SGLT-2 drugs, it follows that many victims of the SGLT-2 class will have claims against multiple manufacturers.  In further support of this contention, several plaintiffs to date have filed multi-manufacturer complaints.[4]  Beyond the multi-manufacturer claims, several lawsuits have been filed and we anticipate many more will be filed making identical claims solely against the manufacturers of Farxiga and Jardiance.

### ARGUMENT

### I.   TRANSFER AND PRETRIAL CENTRALIZATION OF THE SGLT-2 LAWSUITS IS PROPER UNDER 28 U.S.C. 1407

#### A.  *Consolidation into Multidistrict Litigation is Appropriate*

According to 28 U.S.C. § 1407(a), when there are civil actions pending in different districts that involve one or more common questions, transfer for coordinated or consolidated pretrial proceedings is appropriate. *See* 28 U.S.C. § 1407(a).  The goal in consolidation is to eliminate duplication in discovery, avoid conflicting rulings, reduce the parties' litigation expenses, and save the time and effort of the parties, attorneys, witnesses, and courts.  *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968).  Transfer "shall" be made for "the convenience of the parties

---

[4]  *See e.g. House v. Janssen Pharmaceuticals, Inc., et al.*, Case No. 3:15-cv-894 (WDKY) (Invokana and Farxiga)*; MacMurray v. Janssen Pharmaceuticals, Inc., et al.*, Case No. 1:16-cv-2718 (SDIN) (Invokana and Jardiance).

and witnesses" and in situations when such transfer "will promote the just and efficient conduct of such actions." *Id*.   Consolidation of proceedings is particularly important in multi-district litigations where "the potential for conflicting, disorderly, chaotic" action is greatest.   *In re Multidistrict Private Civ. Treble Damages Litig.*, 298 F. Supp. 484, 493 (J.P.M.L. 1968).   The SGLT-2 litigation presents these very risks.

To date, at least seventy-two (72) cases have been filed alleging identical injuries (ketoacidosis and acute kidney failure) caused by nearly identical SGLT-2 inhibitors.   These lawsuits have alleged and will continue to allege identical injuries (ketoacidosis and acute kidney failure) caused by nearly identical SGLT-2 inhibitors.   To date, each of the five principal manufacturers have been name in SGLT-2 lawsuits.   Janssen Pharmaceuticals, Inc., Johnson & Johnson and Mitsubishi Tanabe Pharmaceuticals, Inc. (or a combination thereof) are named in at least sixty-two (62) SGLT-2 lawsuits (Invokana), Bristol-Myers Squibb Co. and AstraZeneca are named in at least four (4) SGLT-2 lawsuits (Farxiga), Boehringer Ingelheim Pharmaceuticals and Eli Lilly and Company are named in at least three (3) SGLT-2 lawsuits (Jardiance) and the principal manufacturers are named in at least three (3) combination SGLT-2 lawsuits.   Based on the current volume and anticipated scope of the SGLT-2 litigation, the presence of common questions of fact across the SGLT-2 litigation and the risk of inconsistent adjudication in these cases, the Panel should  to find the requirements for transfer under §1407 are satisfied.

**B.   *Centralization and Coordination of Multi-Manufacturer Pharmaceutical Cases Similar to the SGLT-2 Litigation Were Recently Endorsed by the JPML***

Centralization and coordination is appropriate in multi-manufacturer pharmaceutical cases like the SGLT-2 litigation.   This is especially true in circumstances where:   1) the products involved are essentially the same; and 2) the individual cases involve multi-defendant complaints seeking recovery against two or more defendants predicated upon use of the same or similar

products.   *See In re: AndroGel Products Liab. Litig.*, 24 F. Supp. 3d 1378 (J.P.M.L. 2014) (JPML centralized claims against the manufacturers of six separate testosterone replacement therapy dugs); *see also In re: Incretin Mimetics*, 968 F. Supp. 2d 1345 (JPML centralized claims against the manufacturers of four separate type 2 diabetes medications); *In re:  Am. Med. Sys., Inc., Pelvic Repair System Products Liab. Litig.*, 844 F.Supp.2d 1359 (JPML 2012); *In re Welding Rod Products Liab. Litig.*, 269 F.Supp.2d 1365 (JPML 2003); *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 173 F.Supp.2d 1377 (JPML 2001).   Like in these cases, here the SGLT-2 matter satisfies the JPML's centralization criteria.  Plaintiffs' claim injuries based on ingestion of SGLT-2 inhibitors, which are essentially identical products manufactured by Defendants.  Further, centralization and coordination in a single forum will result in a significantly more efficient and effective management of the matter for the parties, attorneys and court system.  Isolation of a single SGLT-2 inhibitor for centralization or separating SGLT-2 inhibitors into individual MDLs defeats the very purpose for which MDLs exist and presents a significant risk for inconsistent rulings, duplicative discovery, and inefficient and inconsistent litigation tracks for nearly identical products.  Thus, centralization and coordination is appropriate.

### C. *The Goals of 28 U.S.C.  § 1407 are Best Satisfied Through Class-wide Centralization and Coordination of the SGLT-2 Litigation*

The most critical issue that will be addressed in every SGLT-2 lawsuits relates to general causation – whether SGLT-2 inhibitors' mechanism of action results in an increased risk for patients to suffer ketoacidosis and/or acute kidney failure.  This is a class-wide issue; therefore, common questions of fact must and do exist with regard to all plaintiffs regardless of which SGLT-2 inhibitor they ingested.  Further, discovery regarding the FDA, the FDA processes and drug safety communications demonstrate uniform concerns class-wide which will undoubtedly apply

and relate to every SGLT-2 lawsuit.  Beyond general causation and the FDA, the following

common issues exist in the SGLT-2 litigation uniformly to all actions:

-   Whether Defendants adequately tested the SGLT-2 inhibitors prior to obtaining FDA
    approval to market the drug in the United States;

-   Whether Defendants knew of any defects (design or otherwise) inherent in the SGLT-
    2 inhibitors;

-   Whether Defendants failed to adequately inform the public and/or healthcare
    professionals about the risks associated with SGLT-2 inhibitors; and

-   Whether Defendants concealed or misrepresented important SGLT-2 inhibitor safety
    information from the public and/or healthcare professionals.

JPML centralization of the entire SGLT-2 litigation will allow each common question of

fact to be addressed in the most effective and consistent manner across the board by all Defendants.

Similarly, centralization will allow for class-wide uniformity that will facilitate advancement for

all interested parties.  Equally important, because Defendants' SGLT-2 inhibitors are nearly

identical, without coordination there exists a significant risk of inconsistent rulings, inefficiency,

duplicative discovery/motion practice, duplicative expert discovery and *Daubert* rulings and

incurring unnecessary expenses for all parties.  Should the Panel reject centralization or do so only

for a certain SGLT-2 inhibitor, Courts throughout the country will be forces to independently

address common issues presented by the parties.  This in turn increases the likelihood of

inconsistent rulings.

Absent class-wide certification, single manufacturer or single SGLT-2 product MDL

litigations are inescapable.  With each comes the outlay of judicial resources, party resources and

the risks set forth above.  In order to avoid these things and due to the inevitable factual and

procedural similarities presented by the SGLT-2 litigation as a whole, the goals of 28 U.S.C. §

1407 are best satisfied through class-wide centralization and coordination.  Therefore, the Panel

should establish an MDL in the United States District Court for the Northern District of Illinois

for all cases involving injuries caused by all five Defendants' SGLT-2 inhibitors.

## II.   TRANSFER CONSOLIDATION OF THE SGLT-2 LITIGATION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS IS APPROPRIATE AND WILL PROMOTE THE JUST AND EFFICIENT RESOLUTION OF THE MATTER.

After the JPML determines that centralization is appropriate, its next step is to find an

available and convenient forum to handle the matter. *See Manual for Complex Litig.* § 22.33, at

367 (4th Ed. 2011) ("*Manual*").   In selecting a forum, the Panel seeks a forum that:  1) is not

overtaxed with other MDL cases; 2) has a related action pending on its docket; 3) had a judge with

some degree of expertise in handling the issues presented; and 4) is convenient to the parties.

Federal Judicial Center, *Manual for Complex Litig. Fourth,* § 22.33, p. 367 (2004).  The Northern

District of Illinois is not overtaxed with MDLs and currently, two cases are pending there.  The

first case filed in the Northern District is before the Honorable Judge Amy J. St. Eve.  Judge St.

Eve is well-qualified to oversee the SGLT-2 litigation and has overseen multiple MDLs in the past.

Defendant Janssen Pharmaceuticals, Inc. agrees.   In its Response to motion for Transfer and

Coordination and Consolidated Pretrial Proceeding ("Janssen Motion"), Janssen stated: "Judge St.

Eve is an experience jurist who has served on the bench for over 14 years and has overseen five

multidistrict litigations, giving her the necessary experience and proven track record to oversee

this litigation." Janssen Motion, Case MDL No. 2750, Doc. 32 p. 12 (Filed 10/12/16).

The second case filed in the Northern District is before the Honorable Judge Gary

Feinerman.  Like Judge St. Eve, Judge Feinerman is qualified to oversee the SGLT-2 litigation

and has MDL experience as well.  Beyond Judge St. Eve and Judge Feinerman, 30 other well-

qualified District Judge sitting in the Northern District of Illinois.  Judge St. Eve, Judge Feinerman

and countless other Northern District judges are appropriate choices to oversee the SGLT-2 litigation.

Beyond the well-qualified judges in the Northern District of Illinois, the Court sits in Chicago. Chicago is a convenient location for the SGLT-2 litigation insofar as it is centrally located in the United States and is easily accessible by two major airports (O'Hare Airport and Midway Airport) that get countless non-stop flights from airports nationwide and are home to several major airlines. Equally important, the Northern District of Illinois courthouse sits in close proximity to countless hotels. Finally, a large number of cases are pending or filed in the Midwest. When the SGLT-2 litigation is considered as a whole, making the Northern District of Illinois and Chicago the most reasonable and convenient forum choice. In its motion, Janssen agreed with Plaintiffs' propositions and stated: "Chicago is also centrally located in the country, which mitigates travel burdens for parties and counsel coming from both coasts." Janssen Motion, Case MDL No. 2750, Doc. 32 p. 12 (Filed 10/12/16).

It has been suggested in other filings that the District of New Jersey is the best forum option. Plaintiffs respectfully disagree. Although Janssen Pharmaceuticals, Inc. resides in New Jersey, this fact alone does not qualify the District of New Jersey as the best forum option for the SGLT-2 litigation. Here, there is no question that the parties, their respective counsel, discovery, witnesses and experts can be found across the country. If anything, this fact supports Plaintiffs contention that the Northern District of Illinois is the most appropriate forum.

## CONCLUSION

For the reasons set forth fully herein, Plaintiffs Catherine Faedtke and David Cape respectfully request the Panel coordinate the SGLT-2 inhibitor cases on a class-wide basis, and transfer all actions on the original Schedule of Actions, all noticed Related Actions, and all

subsequently filed tag-along cases to the Northern District of Illinois for pre-trial centralization before Judge Amy J. St. Eve, Judge Gary Feinerman or the Judge the Panel determines is most capable to oversee the litigation in the Northern District of Illinois.  In the event that the Panel decides that only an Invokana-only MDL is appropriate, Plaintiffs request the Panel transfer all cases alleging injuries caused by Invokana for coordination before the Northern District of Illinois.

Dated:  October 24, 2016

                        Respectfully Submitted,

                        */s/ Peter J. Flowers*
                        Peter J. Flowers, Esq.
                        Meyers & Flowers, LLC
                        3 N. 2nd Street, Suite 300
                        St. Charles, IL 60174
                        pjf@meyers-flowers.com
                        (p) 630-232-6333
                        (f)  630-845-8982