## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: INVOKANA (CANAGLIFLOZIN)  )
PRODUCTS LIABILITY LITIGATION   )  **MDL Docket No.: 2750**
               )

**SECOND RESPONSE OF PLAINTIFFS MARIA PUENTE, CARLOS PUENTE,
ELIZABETH SANDERS, ARSHAK SARKISYAN, AMALYA BAGDASARYAN,
CHRISTIE LOTT AND RAY PLOTT TO THE SCHROEDER PLAINTIFF'S SECOND
MOTION FOR TRANSFER OF ACTIONS
<u>FOR CENRALIZATION OF PRE-TRIAL PROCEEDINGS</u>**

## I.  <u>PRELIMINARY STATEMENT</u>

Pursuant to the Scheduling Order of the Judicial Panel of Multidistrict Litigation ("Panel") dated October 12, 2016, Plaintiffs Maria Puente, Carlos Puente, Elizabeth Sanders, Arshak Sarkisyan, Amalya Bagdasaryan, Christie Plott and Ray Plott ("collectively, Plaintiffs") file this response to the Second Motion for Transfer of Actions for Centralization of Pretrial Proceedings filed by Johnson Becker PLLC ("Johnson Becker Motion")[Dkt. 30].

The original motion for consolidation and transfer of all Invokana actions was filed by Seeger Weiss LLP ("Seeger Weiss Motion") on September 20, 2016, and Plaintiffs timely filed their Response to said motion on October 12, 2016, in which they advocated for centralization of all Invokana actions in the United States District Court for the District of New Jersey before Judge Brian R. Martinotti, or, in the alternative, the Southern District of Illinois before Judge Staci Yandle.  *See* Plaintiffs' Response dated October 12, 2016 [Dkt. 33].[1]  Plaintiffs maintain their positions as set forth in said Response and do not intend to readdress them here.  Rather, the purpose of this second response is to address the Johnson Becker Motion, and specifically to

---

[1] Christie and Ray Plott's action was recently filed on Thursday, October 20, 2016, which is why they were not identified as Plaintiffs in Plaintiff's original response.

explain: (1) why an industry-wide SGLT2 Inhibitor MDL is not appropriate here; and (2) why the Northern District of Illinois is not an appropriate venue.

## II.      ADDITIONAL STATEMENT OF RELEVANT FACTS

**A.      SGLT2 Inhibitors and Invokana's Market Dominance**

There are currently three SGLT2 Inhibitors on the market: Invokana, Farxiga and Jardiance.  There also exist four combination drugs related to these SGLT2 Inhibitors: Invokamet (Invokana and Metformin); Xigduo (Farxiga and Metformin); Synjardy (Jardiance and Metformin); and Glyxambi (Jardiance and Linagliptin).

The aforementioned SGLT2 Inhibitors are manufactured, marketed and sold by very different and highly competitive pharmaceutical companies:

- Invokana and Invokamet – Janssen Pharmaceuticals, Inc., Johnson & Johnson Co., Mitsubishi Tanabe Pharma Corp. and all of their related entities ("Johnson & Johnson Defendants");

- Farxiga and Xigduo – Bristol-Myers Squibb Company, AstraZeneca LP and all of their related entities ("AstraZeneca Defendants"); and

- Jardiance, Snyjardy and Glyxambi – Boehringer Ingelheim Pharmaceuticals, Eli Lilly and Company and all of their related entities ("Eli Lilly Defendants").

Invokana was the very first SGLT2 Inhibitor approved by the FDA for the treatment of Type 2 diabetes mellitus ("Type 2 DM").   It was approved by the FDA in March 2013 and enjoyed the entire market for SGLT2 Inhibitors until Farxiga was approved by the FDA in January 2014.  Thereafter, Jardiance was approved by the FDA in August 2014.

In being approved by the FDA, each SGLT2 Inhibitor manufacturer submitted their own supporting documents and clinical studies.  Further, each drug has its own separate and distinct label.[2]

During Invokana's time as the sole SGLT2 Inhibitor on the market, the Johnson & Johnson Defendants aggressively marketed the drug, not only as a drug that effectively treats Type 2 DM but as a drug that effectively treats Type 2 DM <u>and</u> causes weight loss.[3]  Their marketing campaign was successful, and, as a result, Johnson & Johnson's earnings increased significantly.  The Johnson & Johnson Defendants touted Invokana as "the most successful launch in type 2 diabetes since Januvia."  *See* Johnson & Johnson Second Quarter 2014 Earnings Call Presentation. http://files.shareholder.com/downloads/JNJ/0x0x768450/d547e788-190e-4fad-8789-06bd97579d83/JNJ_Earnings_Presentation_2Q2014.pdf.

The Johnson & Johnson Defendants continued with their aggressive marketing strategy even after Farxiga and Jardiance entered the SGLT2 Inhibitor market, and Invokana's market share continued to grow.   As Johnson & Johnson's Chief Financial Officer Dominic Caruso flaunted in 2015: "The product is getting very good acceptance, and it's now … exceeding all the other SGLT2 drugs that have recently come to market, by significant margins,…and it's gaining market share despite increased competition."  http://www.fiercepharma.com/sales-and-marketing/j-j-s-invokana-fends-off-new-sglt2-rivals-to-hit-278m-q1.

As a result of the above – the Johnson & Johnson Defendants' ten-month period as the sole provider of SGLT2 Inhibitors and their aggressive marketing campaign – Invokana and

---

[2]  http://www.accessdata.fda.gov/drugsatfda_docs/label/2016/204042s015s019lbl.pdf - Invokana label;  http://www.accessdata.fda.gov/drugsatfda_docs/label/2016/202293s009lbl.pdf  -  Farxiga label;  and  http://www.accessdata.fda.gov/drugsatfda_docs/label/2016/204629s005lbl.pdf  - Jardiance.
[3]  The FDA never approved Invokana to be marketed as a weight loss drug.

3

Invokamet have been prescribed to significantly more individuals than their competitor SGLT2 Inhibitors.

**B.**    **Approximately Ninety-Six Percent of the SGLT2 Inhibitor Claims on File are Invokana Claims**

In light of the above, it is not surprising that over 175 plaintiffs have Invokana claims compared to the very small number of plaintiffs that have Farxiga and Jardiance claims.[4]  This equates to approximately 96% of the cases before this Panel, excluding the two "combination" cases identified in the Johnson Becker motion and discussed below.

**C.**    **The Two "Combination" Cases May Not Actually Be True "Combination" Cases**

The aforementioned numbers do not include the two actions that were identified within the Johnson Becker motion as being "combination therapy" cases.  *House v. Janssen Pharmaceuticals, Inc. et al.*, 3:15-cv-00894 (W.D.Ky)(Dkt. 1-54) and *MacMurray v. Janssen Pharmaceuticals, Inc. et al.*,1:16-cv-02718 (S.D.In.)(Dkt. 30-13).   As to these two cases, the facts as set forth in the Johnson Becker motion appear to be slightly misleading.

First, in the Johnson Becker motion, it is stated that SGLT2 inhibitors can be used together as "combination therapy" for diabetes and that such occurred in these two cases.  *See* Johnson Becker motion at p. 2.  ("As with many diabetes medications, physicians often prescribe combination therapy (i.e., multiple types of diabetic medications) in an effort to treat diabetes. Not surprisingly, the same is true with SGLT-2 inhibitors. As a result, multiple cases pending within various federal courts — and importantly at least one case in Movants' petition—involve cases with combination therapy of two SGLT-2 therapies.")  **However, this is not the case**.

---

[4] While there are currently over 65 Invokana actions identified as related, one of these actions, filed in the Southern District of Illinois, includes 107 plaintiffs with individual claims related to Invokana.  *Freeman, et al. v. Janssen Pharmaceutical, Inc., et al;* 3:16-cv-00557 (S.D.Ill 2016).

Rather, a physician prescribes one SGLT2 Inhibitor to be taken at a time (perhaps with another diabetic medication that is not an SGLT2 Inhibitor).  The physician may then choose to switch to a different SGLT2 Inhibitor, but it is recommended that he only prescribe one SGLT2 Inhibitor at a time. *See e.g.* Yehuda Handelsman, *Potential Place of SGLT2 Inhibitors in Treatment Paradigms for Type 2 Diabetes Mellitus*, 21 Endocrine Practice 1054, 1062-63 (2015).

Therefore, a case should not exist where two SGLT2 Inhibitors were prescribed to be used in conjunction with one another and caused the same injury (and if there is such a case, it would sound in medical malpractice and more likely than not belong in state court).

Second, a review of the complaints filed in these two actions reveals that the plaintiffs are not alleging that their singular injury was caused by two SGLT2 Inhibitors taken in combination with one another.  To illustrate, in *House,* it alleged that the plaintiff suffered three separate incidences of ketoacidosis – the first being caused by Invokana that was first prescribed in April 2013, the second being caused by Farxiga that was first prescribed in June 2014, and the third being caused by Invokamet, which was prescribed in January 2015.  *See House v. Janssen Pharmaceuticals, Inc.* at pp. 10-11.   As the complaint reads, the plaintiff took the drugs at separate times and her claim arising out of her use of Farxiga relates to a separate incident of ketoacidosis and, thus, belongs separate and apart from the claims arising out of the plaintiff's use of Invokana and/or Invokamet.

As to the plaintiff in *MacMurray*, it is alleged that she took Invokana in early 2015 and was switched to Jardiance in March 2015, and that as a direct and proximate result thereof, she suffered diabetic ketoacidosis on March 21, 2015.  *MacMurray v. Janssen Pharmaceuticals, Inc.* at p. 7.   No exact date is identified in the complaint as to when exactly in March 2015 the plaintiff first began ingesting Jardiance.  *Id.*   To this end, if Jardiance was not prescribed until

after March 21, 2015, this is an Invokana action; if it was prescribed prior to March 21, 2015 then it is a Jardiance action.[5]   Regardless, it does not appear to be an action that involves two separate SGLT2 Inhibitors as the causal agents.

## III.   ARGUMENT

### A.   An Industry-Wide SGLT2 Inhibitor MDL is Not Necessary

This Panel has expressed on more than one occasion that it is hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products." *In re: Yellow Brass Plumbing Component Prods. Liab. Litig.,* 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012); *In re Power Morcellator*, 140 F. Supp. 3d 1351 (denying an industry-wide MDL and creating an MDL specific to only one manufacturer where that manufacturer was the defendant in 15 of the 20 actions subject to the transfer motion); *In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347 (J.P.M.L. 2006)(centralizing only those claims related to Fosamax but excluding claims of other osteoporosis drugs).

While the Panel has made exceptions in certain litigations presenting unique facts and circumstances, *see In re Incretin Mimetics Prods. Liab. Litig.*, 968 F.Supp.2d 1345 (J.P.M.L. 2013) *and In Re Androgel Products Liab. Litig.*, 24 F. Supp. 3d 1378 (J.P.M.L. 2014), such unique facts and circumstances are not present here.

---

[5] Based upon the allegations in the *MacMurray* complaint, Utah's two-year statute of limitations would apply to this claim and, thus, would arguably not have expired until March 2017.   As such, the plaintiff had approximately five additional months to determine which product she had received at the time of her injury prior to filing suit.   The fact that her complaint was filed on October 10, 2016, after the Seeger Weiss motion had been filed but before her counsel's second motion was filed, leads one to believe that it was filed for the sole purpose of including a second "combination" case into the mix in some sort of effort to strengthen the argument that an industry-wide SGLT2 Inhibitor MDL should be formed.   Of course, as set forth herein, no case is truly a combination case, except in the rarest of circumstances.

To illustrate, in *Incretin*, the Panel consolidated an industry-wide MDL noting that, while it was hesitant to do so, the following unique facts supported consolidation: (1) plaintiffs had made similar allegations about each of the four drugs that manage blood insulin levels and the propensity of those drugs to cause pancreatic cancer; (2) several plaintiffs took more than one of the drugs at issue at the same time (i.e. Byetta and Januvia), which suggested that discovery specific to the plaintiffs in those cases would involve many of the same or substantially similar documents and witnesses; and (3) all of the involved defendants supported centralization. *In Re Incretin*, 968 F.Supp.2d at 1346-47.

Here, as discussed above, we are not dealing with a situation where plaintiffs would have taken more than one SGLT2 Inhibitor at a time. Further, at least two of the three involved defendants do not support an industry-wide MDL. Thus, the unique facts that the Judicial Panel noted existed in *Incretin* that allowed for an exception to its general position against industry-wide MDLs are not present here.

Similarly, in *Androgel*, the following unique facts and circumstances were noted: (1) all responding plaintiffs supported an industry-wide MDL; (2) a majority of the defendants, including the ones with the highest market share, supported an industry-wide MDL; (3) the number of cases was estimated to be in the thousands; (4) a number of plaintiffs used more than one testosterone replacement therapy; and (5) the alternative proposed approaches would prove too procedurally complicated and would likely delay the resolution of the common core issues. *In Re Androgel,* 24 F. Supp. 3d at 1378-1380.

In this case, not all plaintiffs support an industry-wide MDL. In fact, as of the time of this filing, only four plaintiffs out of over 175 (all four of whom are represented by the same law

firm) have advocated for the creation of an SGLT2 Inhibitor MDL. The remaining plaintiffs either support an Invokana only MDL or have not filed a response.

As noted above, at least two of three involved defendants do **not** support an industry-wide MDL, including the Johnson & Johnson Defendants against whom approximately 96% of the actions have been filed and the AstraZeneca Defendants.

Further, as mentioned above, no plaintiff took SGLT2 Inhibitors in combination with one another, so it will be an extremely rare case where two or more SGLT2 Inhibitors will be alleged to have caused the injury at issue. Thus, even if a plaintiff was originally prescribed an SGLT2 Inhibitor and then switched to a different one before suffering the injury, the action will relate to the second prescribed SGLT2 Inhibitor, and there will be no confusion as to which drug manufacturer is allegedly responsible for the injuries.

As to the extremely rare case, perhaps a situation could arise where an individual was switched to a different SGLT2 Inhibitor and suffered an injury within three days from the switch. In that unique scenario, an argument could be made that the prior SGLT2 Inhibitor contributed to the injury. But such a rare occurrence does not support that an industry-wide MDL need be created. The Panel has previously noted that in such rare cases, rather than creating an industry-wide MDL, the action should simply be transferred to the product-specific MDL leaving it to the MDL judge to ultimately determine how to proceed with the case. *See In re Power Morcellator Prods. Liab. Litig.,* 140 F. Supp. 3d 1351 (J.P.M.L. 2015)(creating an MDL as to only one manufacturer – Ethicon – but transferring two actions that named Ethicon and a competing manufacturer as defendants finding it would not cause an undue burden on the parties because: (1) separation of claims could create confusion and inefficiency concerning causation and liability; (2) plaintiffs had suggested that there would be very few multi-defendant actions; and

(3) most cases naming multi-defendants involved issues of product identification and ultimately would involve only one manufacturer as the proper defendant.)

Moreover, an Invokana-only MDL simply makes sense because over 175 plaintiffs have claims related to Invokana when compared to the minimal number of cases involving other SGLT2 Inhibitors. Therefore, it is not a proposal that would prove too procedurally complicated or would cause delay of the resolution of the common core issues. To the contrary, an industry-wide MDL would likely cause delay by adding unnecessary defendants into the mix. Accordingly, this litigation is distinguishable from *Androgel*.

Another fact that supports the creation of an Invokana-only MDL is that the actions involving Invokana are further advanced than the actions involving the other two SGLT2 Inhibitors. As mentioned in Plaintiffs' original brief, and, as discussed further below, with respect to the Invokana actions pending in the District of New Jersey before Judge Martinotti, status conferences have been held, interim liaison counsel has been appointed, and case management orders have been entered directing counsel to meet and confer regarding foundational orders, such as short-form complaints, short-form answers, plaintiff fact sheets, defendant fact sheets, a confidentiality order and an ESI order. In fact, in response to Judge Martinotti's directives, the parties are in the process of finalizing and entering certain of these orders, including a confidentiality order, an ESI Order, and a short-form complaint order.

This progress would be lost if an industry-wide SGLT2 Inhibitor MDL was created as others defendants would likely not agree to these issues, and the parties would be set several months back trying to resolve these preliminary matters.

Lastly, it is simply not the norm to consolidate industry-wide litigations where the allegations relate to the safety risks associated with a specific drug and not the class of drug to

which it belongs.   This is true no matter how similar the drugs are in composition and/or in treating the medical condition for which they are prescribed.   Here, if an industry-wide MDL was created, it would simply allow gatherers to park their cases in the MDL while the Invokana actions went forward.  (Thus, for this reason, it would not be surprising if we see some limited support for the Johnson Becker motion.)

The first example of related pharmaceutical drug MDLs which have proceeded on their own is Pradaxa and Xarelto.  Each of these anticoagulants have their own separate MDLs, despite the fact that they both were prescribed as blood thinners and the alleged associated injuries with respect to both of them were uncontrolled bleeding events.  Additionally, similar to this case, patients may have been prescribed both anticoagulants, but not contemporaneously with each other, and the one that allegedly caused the injury was the one they were actually taking at the time of the injury.   And these MDLs were created only after ample cases and science had developed as to each individual drug.  *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.* (MDL-2385) consolidated in August 2012; *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.* (MDL 2592) consolidated in December 2014. .

Similarly, three cox-2 inhibitor pain reliever products – Vioxx, Bextra and Celebrex – were consolidated into two separate MDLs even though they were all prescribed as pain relievers and their associated injuries were heart attacks and strokes.   *In re Vioxx Prods. Liab. Litig.* (MDL-1657) consolidated in February 2005; *In re Bextra and Celebrex Marketing, Sales Practices and Prods. Liab. Litig.* (MDL-1699) consolidated in September 2005.  (Regarding Bextra and Celebrex they were consolidated into the same MDL because they were manufactured by the same defendant so the concern about "competing" defendants was lacking in that situation).

Another example was where two antipsychotic medications proceeded in two separate MDLs at different times despite being prescribed to treat generally the same mental conditions and despite both of them causing an increased risk for developing diabetes. *In re Zyprexa Prods. Liab. Litig.* (MDL-1596) consolidated in April 2004; *In Re Seroquel Prods. Liab. Litig.* (MDL-1769) consolidated in July 2006.

In conclusion, an industry-wide SGLT2 Inhibitor MDL is not the appropriate course of action here and the unique facts of the *Incretin* and *Androgel* cases relied upon in the Johnson Becker motion are clearly very distinguishable from the facts before the Panel now.

As such, Plaintiffs respectfully submit that the Johnson Becker motion be denied in so much as it seeks to include claims related to two other SGLT2 inhibitors in this MDL.

**B.      The Northern District of Illinois is Not the Most Appropriate Venue for this MDL**

It should be clear based upon the filings to date that the United States District Court for the District of New Jersey is the most appropriate venue for the Invokana actions.

To recap: (1) the District of New Jersey is a convenient and accessible venue; (2) two of the three Johnson & Johnson Defendants maintain their principal places of business in New Jersey and, as such, key witnesses and documents will be found in New Jersey, (3) there are at least 46 Invokana actions currently pending in the District of New Jersey that have all been consolidated and assigned to Judge Martinotti; (4) the New Jersey Invokana consolidated litigation is significantly further advanced than any other Invokana actions that have been filed in other venues and continues to advance; and (5) Judge Martinotti is an exceptional jurist with substantial  mass tort products liability experience, especially in the pharmaceutical drug context.

Also important is that plaintiffs in a majority of the actions that have been filed <u>and</u> the Invokana Defendants all support the District of New Jersey as the most appropriate venue for

this MDL. *In re Transitions Lenses Antitrust Litig.,* 730 F. Supp. 2d 1381 (J.P.M.L. 2010)(transferring to a venue that all domestic defendants and plaintiffs in a majority of the actions supported as a first or alternative choice noting that no other forum had comparable support).   Thus, contrary to what is declared in the Johnson Becker motion, the District of New Jersey has in fact "evidenced itself as a broad-based consensus jurisdiction by the Parties." *See* Johnson Becker motion at p. 16.

Despite the above, the Johnson Becker motion dismisses the District of New Jersey as an appropriate venue and instead advocates for the Northern District of Illinois.   But the Northern District of Illinois is not the most appropriate venue for this MDL.

First, there are only two Invokana actions pending in the Northern District of Illinois (one before Judge Amy St. Eve and the other before Judge Gary Feinerman) compared to the at least 46 actions pending in the District of New Jersey.  *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 787 F. Supp. 2d 1355 (J.P.M.L. 2011) (transferring to the District of New Jersey noting that nearly 2/3 of the pending actions were already there before a single judge). The first case in the District of New Jersey was filed in November 2015 whereas the first case in the Northern District of Illinois was only very recently filed in September 2016.

Second, neither of these two cases have advanced anywhere remotely as far as the cases currently pending before Judge Martinotti.   *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 997 F. Supp. 2d 1354, 1356 (J.P.M.L. 2014)(transferring cases to the District of South Carolina (after initially denying transfer six months prior), where many of the actions were pending and where the judge assigned to all of the actions was already handling them in a coordinated fashion).   To this end, the claim by the Johnson Becker plaintiffs that "no case in this litigation is particularly ahead or behind any other in terms of its particular

12

procedural posture" is incorrect.   To be clear, as set forth in Plaintiffs' original Response, the

action in the District of New Jersey has advanced well beyond other venues.

Again, Judge Martinotti has:

(1)     held two in-person status conferences, one on August 29, 2016 and one on October 5, 2016 and has scheduled a third for November 15, 2016;

(2)     has already issued two Case Management Orders, one on August 30, 2016 and the other on October 5, 2016, that direct counsel for the parties to    meet   regarding preliminary procedural orders, such as short-form        complaints,       short-form answers, plaintiff fact sheets and defendant fact sheets;

(3)     has appointed interim liaison counsel to assist in the continued coordination and litigation of the case during this request for centralization;

(4)     has successfully had the parties agree that all motions to dismiss would be administratively terminated without prejudice; and

(5)     will likely be entering Case Management Orders in the very near future, including a uniform Confidentiality Order to govern the production of confidential information that is being produced as well as an order governing electronically stored information "ESI order."[6]

Additionally, as mentioned above, in response to Judge Martinotti's Orders, the parties

are in the process of finalizing and entering certain orders relative to the Johnson & Johnson

Defendants, including a case management order to address the filing of short form complaints,

and other procedural matters to make the litigation more effective for the parties to manage and

the Court to oversee.

The fact that progress and work continues with the Invokana Defendants in the District of

New Jersey cases (and that no stay has been sought) underscores that the District of New Jersey,

and thus Judge Martinotti, as the appropriate venue for this MDL to proceed.

---

[6] Plaintiffs have proposed the Southern District of Illinois and Judge Yandle as an alternative venue and the actions before her are also more advanced than the two actions filed in the Northern District of Illinois.  She has issued several orders as well.

Third, no Invokana Defendant is located in Illinois.  *In re Plavix Mktg., Sales Practice & Prods. Liability Litig.*, 923 F. Supp. 2d 1376 (J.P.M.L. 2013)(transferring MDL to District of New Jersey, Trenton Division where certain defendants had headquarters in New Jersey and Defendants had represented that a majority of the conduct complained of occurred in New Jersey).

Finally, the Northern District of Illinois currently has 14 MDLs before it, two of which are assigned to Judge St. Eve and one of which is assigned to Judge Feinerman.  Regarding the latter point, there is no question that Judge St. Eve and Judge Feinerman are experienced jurists who are more than capable of managing an MDL.   However, given the MDLs currently before them, it is unclear whether they have the time to devote to this MDL as Judge Martinotti undoubtedly does.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs herein respectfully request that the Panel: (1) grant the Seeger Weiss Motion for consolidation and centralization of all Invokana actions via a multidistrict litigation to the United States District Court for the District of New Jersey, Trenton Division, or in the alternative, the United States District Court for the Southern District of Illinois; (2) deny the Johnson Becker motion in so much as it seeks consolidation and centralization of all SGLT2 Inhibitor actions in the Northern District of Illinois; and (3) grant such other and further relief as it may deem just and appropriate under the circumstances.

Dated: October 24, 2016          By:     <u>*/s/ Michael A. London*</u>
                                         Michael A. London, Esq. (ML-7510)
                                         DOUGLAS & LONDON, P.C.
                                         59 Maiden Lane, 6th Floor
                                         New York, New York 10038
                                         Ph:  (212) 566-7500
                                         Fax: (212) 566-7501
                                         *Attorneys for Plaintiffs*