BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: INVOKANA (CANAGLIFLOZIN) ) <br> PRODUCTS LIABILITY LITIGATION ) <br> ) | MDL NO. 2750 |

MEMORANDUM OF LAW IN SUPPORT OF INTERESTED PARTY RESPONSE
PURSUANT TO JPML RULE 6.2(e) AND 28 U.S.C. § 1407

ORAL ARGUMENT REQUESTED

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiffs Terrance and Brenda Carlson and John Kampe (hereinafter "Plaintiffs") respectfully submit this Memorandum of Law in Support of Interested Party Response requesting an Order transferring and consolidating this litigation to the United States District Court for the Northern District of Illinois.

## I. SUMMARY OF THE CASE AND OF THE ARGUMENT

### A. *SGLT-2 Inhibitors*

Historically, type 2 diabetics took medications that eliminated glucose from their blood stream, manipulated the body's sensitivity to insulin or caused the body to secrete insulin. Sodium Glucose Cotransporter 2 ("SGLT-2") inhibitors have a different mechanism of action. Unlike historical treatment options, SGLT-2 inhibitors obstruct the body's glucose absorption and allow excess sugars to be disposed of by the kidneys. SGLT-2 inhibitors first hit the market in 2013. There are five principal manufactures and developers of SGLT-2 drugs: 1) Janssen Pharmaceuticals, Inc. (Invokana – canagliflozin); Bristol-Myers Squibb (Farxiga - dapagliflozin); AstraZeneca (Farxiga); Eli Lilly and Company (Jardiance - empagliflozin); and Boehringer Ingelheim Pharmaceuticals, Inc. (Jardiance). Although the Food and Drug Administration ("FDA") only cleared SGLT-2 inhibitors soles for the treatment of type 2 diabetes, Defendants

1

widely advertised their SGLT-2 inhibitors to provide weight-loss benefits to patients. Because weight plays a significant role in the management of type 2 diabetes, Defendants' deceptive off-label weight-loss promotion dramatically increased the interest and prescription of SGLT-2 inhibitors by physicians.

### B.   Defendants' Knowledge of Safety Risks

Before Plaintiffs took SGLT-2 inhibitors, Defendants knew that the SGLT-2 class was associated with the risk of serious injuries. Despite their knowledge of the potential for these drugs to cause serious injuries, Defendants failed to provide safety warnings to the public and/or healthcare providers. Since SGLT-2 inhibitors were first cleared by the FDA, evidence has shown that the class of drugs can cause serious injuries including diabetic ketoacidosis and/or kidney failure.[1,2] Defendants knew or should have known of the risk of ketoacidosis and acute kidney failure associated with their SGLT-2 inhibitors. Rather than taking appropriate action and warning the public and healthcare professionals, Defendants aggressively combined their SGLT-2 marketing campaigns and concealed their knowledge.

Only after the FDA took action and widely disseminated this important safety information did Defendants begin providing appropriate warnings to the public and/or healthcare providers. Unfortunately, Defendants' actions and delay came with serious and sometimes fatal implications for patients ingesting SGLT-2 inhibitors. Plaintiffs identified in the Schedules of Action filed in

---

[1]  5/15/2015 – FDA issues a Drug Safety Communication warning that each drug in the SGLT-2 class could cause diabetic ketoacidosis, a condition that most commonly occurs in patients with type 1 diabetes. http://www.fda.gov/Drugs/DrugSafety/ucm446845.htm.

[2]  6/14/2016 – FDA issues a Drug Safety Communication warning that Invokana, Invokamet, Farxiga and Xigduo XR could cause acute kidney injury and had received reports of more than 100 confirmable acute kidney injury cases. http://www.fda.gov/Safety/MedWatch/SafetyInformation/SafetyAlertsforHumanMedicalProducts/ucm506554.htm

relation to this MDL request have made allegations that they suffered diabetic ketoacidosis or kidney failure which was caused by the ingestion of one or a combination of SGLT-2 inhibitors.

### C. *Multi-Manufacturer Ingestion/Farxiga and Jardiance Ingestion*

Like many other health conditions, type 2 diabetics are often prescribed and take multiple medications to treat the condition. This is referred to as combination therapy and applies equally to SGLT-2 inhibitors. Because physicians often prescribe a combination of two or more SGLT-2 drugs, it follows that many victims of the SGLT-2 class will have claims against multiple manufacturers. In further support of this contention, several plaintiffs to date have filed multi-manufacturer complaints.[3] Beyond the multi-manufacturer claims, several lawsuits have been filed and it is reasonably anticipated many more will be filed making identical claims solely against the manufacturers of Farxiga and Jardiance.

### D. *Consolidation and Coordination is Appropriate in the Northern District of Illinois*

The litmus test of transferability and coordination under § 1407 is the presence of common questions of fact. *In re Managed Care Litigation*, 246 F. Supp. 2d 1363, 1364 (J.P.M.L. 2003); *In re South African Apartheid Litigation*, 238 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002).

> **When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings**. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that **transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions**. 28 U.S.C. § 1407(a)

---

[3] *See e.g. House v. Janssen Pharmaceuticals, Inc., et al.*, Case No. 3:15-cv-894 (WDKY) (Invokana and Farxiga)*; MacMurray v. Janssen Pharmaceuticals, Inc., et al.*, Case No. 1:16-cv-2718 (SDIN) (Invokana and Jardiance).

If the related cases involve common questions, it is likely that they will benefit from consolidation or coordination. *In re Equity Funding Corp. of America Securities Litig*, 375 F. Supp. 1378, 1382 (J.P.M.L. 1974). Unique factual issues in the individual cases do not defeat transfer, and all factual issues in the scheduled actions need not be common for the cases to benefit from coordination or consolidation. *In re Amsted Industries Inc. ERISA Lit.,* 162 F. Supp.2d 697, 698 (J.P.M.L. 2001).

The purpose of 28 U.S.C. § 1407 is to ensure centralized management of pretrial proceedings to ensure the just, efficient, and consistent conduct during litigation. *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.,* 238 F. Supp. 2d. 270, 273 (D.D.C. 2002); *In re Air Crash off Long Island, N.Y. on July 17, 1996*, 965 F. Supp. 5, 7 (S.D.N.Y. 1997); *In the Matter of New York City Mun. Sec. Li..,* 572 F.2d 49, 51 (2nd Cir. 1978).

Here, coordination and consolidation are proper and necessary. The claims involve common questions of law and fact. Consolidation serves the best interests of the parties both economically (preventing unnecessary expenditure of time and resources) and equitably (helping ensure consistent discovery, evidentiary, and other pretrial rulings). Accordingly, for the reasons more fully disclosed below, these actions should be coordinated and consolidated and the Northern District of Illinois is an appropriate venue for this MDL.

## II.  ARGUMENT

**TRANSFER AND PRETRIAL CENTRALIZATION OF THE SGLT-2 LAWSUITS IS PROPER UNDER 28 U.S.C. 1407**

### A.  *Consolidation into Multidistrict Litigation is Appropriate*

According to 28 U.S.C. § 1407(a), when there are civil actions pending in different districts that involve one or more common questions, transfer for coordinated or consolidated pretrial proceedings is appropriate. *See* 28 U.S.C. § 1407(a). The goal in consolidation is to eliminate

4

duplication in discovery, avoid conflicting rulings, reduce the parties' litigation expenses, and save the time and effort of the parties, attorneys, witnesses, and courts. *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968). Transfer "shall" be made for "the convenience of the parties and witnesses" and in situations when such transfer "will promote the just and efficient conduct of such actions." *Id*. Consolidation of proceedings is particularly important in multi-district litigations where "the potential for conflicting, disorderly, chaotic" action is greatest. *In re Multidistrict Private Civ. Treble Damages Litig.*, 298 F. Supp. 484, 493 (J.P.M.L. 1968). The SGLT-2 litigation presents these very risks.

To date, approximately seventy-two (72) cases have been filed alleging identical injuries (ketoacidosis and acute kidney failure) caused by nearly identical SGLT-2 inhibitors. These lawsuits have alleged and will continue to allege identical injuries (ketoacidosis and acute kidney failure) caused by nearly identical SGLT-2 inhibitors. To date, each of the five principal manufacturers have been name in SGLT-2 lawsuits. Janssen Pharmaceuticals, Inc., Johnson & Johnson and Mitsubishi Tanabe Pharmaceuticals, Inc. (or a combination thereof) are named in at least sixty-two (62) SGLT-2 lawsuits (Invokana), Bristol-Myers Squibb Co. and AstraZeneca are named in at least four (4) SGLT-2 lawsuits (Farxiga), Boehringer Ingelheim Pharmaceuticals and Eli Lilly and Company are named in at least three (3) SGLT-2 lawsuits (Jardiance) and the principal manufacturers are named in at least three (3) combination SGLT-2 lawsuits. Based on the current volume and anticipated scope of the SGLT-2 litigation, the presence of common questions of fact across the SGLT-2 litigation and the risk of inconsistent adjudication in these cases, the Panel should to find the requirements for transfer under §1407 are satisfied.

### B. *Centralization and Coordination of Multi-Manufacturer Pharmaceutical Cases Similar to the SGLT-2 Litigation Were Recently Endorsed by the JPML*

Centralization and coordination is appropriate in multi-manufacturer pharmaceutical cases like the SGLT-2 litigation. This is especially true in circumstances where: (1) the products involved are essentially the same; and (2) the individual cases involve multi-defendant complaints seeking recovery against two or more defendants predicated upon use of the same or similar products. *See In re: AndroGel Products Liab. Litig.*, 24 F. Supp. 3d 1378 (J.P.M.L. 2014) (JPML centralized claims against the manufacturers of six separate testosterone replacement therapy dugs); *see also In re: Incretin Mimetics*, 968 F. Supp. 2d 1345 (JPML centralized claims against the manufacturers of four separate type 2 diabetes medications); *In re: Am. Med. Sys., Inc., Pelvic Repair System Products Liab. Litig.*, 844 F.Supp.2d 1359 (JPML 2012); *In re Welding Rod Products Liab. Litig.*, 269 F.Supp.2d 1365 (JPML 2003); *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 173 F.Supp.2d 1377 (JPML 2001). Like in these cases, here the SGLT-2 matter satisfies the JPML's centralization criteria. Plaintiffs' claim injuries based on ingestion of SGLT-2 inhibitors, which are essentially identical products manufactured by Defendants. Further, centralization and coordination in a single forum will result in a significantly more efficient and effective management of the matter for the parties, attorneys and court system. Isolation of a single SGLT-2 inhibitor for centralization or separating SGLT-2 inhibitors into individual MDLs defeats the very purpose for which MDLs exist and presents a significant risk for inconsistent rulings, duplicative discovery, and inefficient and inconsistent litigation tracks for nearly identical products. Thus, centralization and coordination is appropriate.

### C. *The Goals of 28 U.S.C. § 1407 are Best Satisfied Through Class-wide Centralization and Coordination of the SGLT-2 Litigation*

The most critical issue that will be addressed in every SGLT-2 lawsuits relates to general causation – whether SGLT-2 inhibitors' mechanism of action results in an increased risk for

patients to suffer ketoacidosis and/or acute kidney failure. This is a class-wide issue; therefore, common questions of fact must and do exist with regard to all plaintiffs regardless of which SGLT-2 inhibitor they ingested. Furthermore, discovery regarding the FDA, the FDA processes and drug safety communications demonstrate uniform concerns class-wide which will undoubtedly apply and relate to every SGLT-2 lawsuit. Beyond general causation and the FDA issues, the following common SGLT-2 litigation issues include:

(1) Whether the Defendants failed to warn and/or adequately warned consumers and physicians about the risks of serious injury caused by SGTL-2 inhibitors;

(2) Whether the Defendants intentionally, deliberately, knowingly, carelessly, recklessly, or negligently misrepresented, omitted, concealed or suppressed material and important information regarding the true and known risks of SGTL-2 inhibitors;

(3) Whether the Defendants' conduct in marketing, advertising, and/or promoting SGTL-2 inhibitors was negligent;

(4) Whether Defendants' conduct was negligent and/or intentional in failing to properly, fully and/or thoroughly study and test SGTL-2 inhibitors;

(5) Whether the Defendants' misconduct constitutes breaches of any warranties recognized by law.

JPML centralization of the entire SGLT-2 litigation will allow each common question of fact to be addressed in the most effective and consistent manner across the board by all Defendants. Similarly, centralization will allow for class-wide uniformity that will facilitate advancement for all interested parties. Equally important, because Defendants' SGLT-2 inhibitors are nearly identical, without coordination there exists a significant risk of inconsistent rulings, inefficiency, duplicative discovery/motion practice, duplicative expert discovery and *Daubert* rulings and incurring unnecessary expenses for all parties. Should the Panel reject centralization or do so only for a certain SGLT-2 inhibitor, Courts throughout the country will be forced to independently address common issues presented by the parties. This in turn increases the likelihood of inconsistent rulings, a result centralization is designed to prevent.

Absent class-wide certification, single manufacturer or single SGLT-2 product MDL litigations are inescapable. With each comes the outlay of judicial resources, party resources and the risks set forth above. In order to avoid these things and due to the inevitable factual and procedural similarities presented by the SGLT-2 litigation as a whole, the goals of 28 U.S.C. § 1407 are best satisfied through class-wide centralization and coordination. Therefore, the Panel should establish an MDL in the United States District Court for the Northern District of Illinois for all cases involving injuries caused by all five Defendants' SGLT-2 inhibitors.

### TRANSFER CONSOLIDATION OF THE SGLT-2 LITIGATION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS IS APPROPRIATE AND WILL PROMOTE THE JUST AND EFFICIENT RESOLUTION OF THE MATTER.

After the JPML determines that centralization is appropriate, its next step is to find an available and convenient forum to handle the matter. *See Manual for Complex Litig.* § 22.33, at 367 (4th Ed. 2011) ("*Manual*"). In selecting a forum, the Panel seeks a forum that: (1) is not overtaxed with other MDL cases; (2) has a related action pending on its docket; (3) had a judge with some degree of expertise in handling the issues presented; and 4) is convenient to the parties. Federal Judicial Center, *Manual for Complex Litig. Fourth,* § 22.33, p. 367 (2004). The Northern District of Illinois is not overtaxed with MDLs and currently, two cases are pending there. The first case filed in the Northern District is before the Honorable Judge Amy J. St. Eve. Judge St. Eve is well-qualified to oversee the SGLT-2 litigation and has overseen multiple MDLs in the past. Defendant Janssen Pharmaceuticals, Inc. agrees. In its Response to motion for Transfer and Coordination and Consolidated Pretrial Proceeding ("Janssen Motion"), Janssen stated: "Judge St. Eve is an experience jurist who has served on the bench for over 14 years and has overseen five multidistrict litigations, giving her the necessary experience and proven track record to oversee this litigation." Janssen Motion, Case MDL No. 2750, Doc. 32 p. 12 (Filed 10/12/16).

8

The second case filed in the Northern District is before the Honorable Judge Gary Feinerman. Like Judge St. Eve, Judge Feinerman is qualified to oversee the SGLT-2 litigation and has MDL experience as well. Beyond Judge St. Eve and Judge Feinerman, 30 other well-qualified District Judge sitting in the Northern District of Illinois. Judge St. Eve, Judge Feinerman and countless other Northern District judges are appropriate choices to oversee the SGLT-2 litigation.

Beyond the well-qualified judges in the Northern District of Illinois, the Court sits in Chicago. Chicago is a convenient location for the SGLT-2 litigation insofar as it is centrally located in the United States and is easily accessible by two major airports (O'Hare Airport and Midway Airport) that get countless non-stop flights from airports nationwide and are home to several major airlines. Equally important, the Northern District of Illinois courthouse sits in close proximity to countless hotels. Finally, a large number of cases are pending or filed in the Midwest. When the SGLT-2 litigation is considered as a whole, making the Northern District of Illinois and Chicago the most reasonable and convenient forum choice. In its motion, Janssen agreed with Plaintiffs' propositions and stated: "Chicago is also centrally located in the country, which mitigates travel burdens for parties and counsel coming from both coasts." Janssen Motion, Case MDL No. 2750, Doc. 32 p. 12 (Filed 10/12/16).

It has been suggested in other filings that the District of New Jersey is the best forum option. Plaintiffs respectfully disagree. Although Janssen Pharmaceuticals, Inc. resides in New Jersey, this fact alone does not qualify the District of New Jersey as the best forum option for the SGLT-2 litigation. Here, there is no question that the parties, their respective counsel, discovery, witnesses and experts can be found across the country. If anything, this fact supports Plaintiffs contention that the Northern District of Illinois is the most appropriate forum for this MDL.

## IV. CONCLUSION

For the reasons set forth fully herein, Plaintiffs Terrance and Brenda Carlson and John Kampe respectfully request the Panel coordinate the SGLT-2 inhibitor cases on a class-wide basis, and transfer all actions on the original Schedule of Actions, all noticed Related Actions, and all subsequently filed tag-along cases to the Northern District of Illinois for pre-trial centralization before Judge Amy J. St. Eve, Judge Gary Feinerman or the Judge the Panel determines is most capable to oversee the litigation in the Northern District of Illinois. In the event that the Panel decides that only an Invokana-only MDL is appropriate, Plaintiffs request the Panel transfer all cases alleging injuries caused by Invokana for coordination before the Northern District of Illinois.

Dated: October 26, 2016

                                              Respectfully Submitted,

                                              */s/ Annesley H. DeGaris*
                                              Annesley H. DeGaris, Esq.
                                              DeGaris & Rogers, LLC
                                              Two North Twentieth Street
                                              Suite 1030
                                              Birmingham, AL 35203
                                              adegaris@degarislaw.com
                                              asapone@degarislaw.com
                                              (p) 205-558-9000
                                              (f) 205-588-5231